Jasen, J.
The plaintiff, Howard Jaeobsón, is a licensed owner and trainer of thoroughbred horses. The defendant, New York Racing Association (NYRA), is a nonprofit racing association incorporated under the Racing Law (Horse Racing Act [L. 1926, ch. 440, as amd.], § 1-a). It owns the major thoroughbred racetracks in the State of New York — Aqueduct, Belmont Park and Saratoga — and, pursuant to a 25-year franchise granted by the State Racing Commission (Horse Racing Act, § 7-a, added by L. 1955, ch. 812, § 2), conducts thoroughbred races there with pari-mutuel betting. Since 1952, Jacobson has been granted stall space at these tracks. In 1970, his license was suspended by the State Racing Commission for 45 days. After the license was restored by the Racing Commission, NYRA denied him stall space at its tracks, virtually barring him from thoroughbred racing in the State. Alleging injury, Jacobson commenced an action for damages.
The defendant moved to dismiss the complaint on the grounds that it failed to state a cause of action and that there was another action pending in the United States District Court between the same parties for the same cause. In denying the motion, Special Term distinguished the common-law rule permitting the exclusion of patrons from private places of amusement (People v. Licata, 28 N Y 2d 113; Madden v. Queens County Jockey Club, *148 296 N. Y. 249, cert. den. 332 U. S. 761) and held that the defendant, as a nonprofit quasi-public association, in possession of a virtual monopoly on thoroughbred racing in the State of New York, did not possess an absolute immunity from justifying its denial of stall space to the plaintiff. The court also held that identity of issue was lacking between the instant action and the cause then pending in Federal court and that there was no reason to dismiss under CPLR 3211 (subd. [a], par. [4]).
The Appellate Division agreed that the complaint was sufficient, but converted the action into a proceeding pursuant to CPLR article 78 to review defendant’s action. The essential question, said the Appellate Division, was whether the common-law doctrine of the Madden case {supra), decided in 1947, had been changed by legislation (Horse Racing Act, § 7-a, added by L. 1955, ch. 812, § 2; Pari-Mutuel Revenue Law, § 4-a, added by L. 1955, ch. 813, § 1) pursuant to which NYRA was created. The court was of the view that the close regulation of NYRA by the State Racing Commission, the delegation to it of the conduct of pari-mutuel betting, and the supervision of the affairs of the NYRA by the Racing Commission established sufficient State presence and participation in the challenged activity to bring into play the constitutional guarantee of due process of law. (U. S, Const., 14th Arndt.) In this regard, the court said the 25-year franchise granted by the State, the franchise fee consisting of the taxable income subject to stipulated deductions (Horse Racing Act, § 7-a) and the disposition, upon dissolution, of the defendant’s assets to exempt organizations designated by the Governor {id., § 1-a, subd. 2) became highly significant and indicated that defendant was placed in the role of an instrumentality of the State. Since defendant was performing State action, the court said, it could not be held in damages for a wrongful exercise of power. Instead, plaintiff was entitled to a review of defendant’s action under CPLR article 78. Finally, the Appellate Division agreed that there was no identity of issue or parties between the instant action and the Federal court action seeking damages and injunctive relief for alleged violations of the Federal antitrust laws, and that dismissal under CPLR 3211 (subd. [a], par. [4]) was not indicated. On motion by the defendant, and cross motion by the plaintiff, the Appellate Division granted leave to appeal and certified the *149 following question: “ Was the order of this court, dated March 5, 1973, properly made? ”
At common law a person engaged in a public calling, such as an innkeeper or common carrier, was under a duty to serve without discrimination all who sought service. On the other hand, proprietors of private enterprises, such as places of amusement and resort, had no such obligation and were privileged to serve whomever they pleased. In Madden v. Queens County Jockey Club (296 N. Y. 249, supra), we recognized the common-law rule, as limited by the Civil Rights Law (§ 40), that the operator of a racetrack licensed by the State may, without reason or sufficient excuse, exclude a patron from the premises provided the exclusion is not based on race, creed, color or national origin. This rule was recently reaffirmed by this court in People v. Licata (28 N Y 2d 113, supra).
On their facts, the Madden and Licata cases dealt with the right of a proprietor of a private racetrack to exclude a patron. Some courts have deemed the rationale applicable as well to the exclusion of a licensed jockey (Martin v. Monmouth Park Jockey Club, 145 F. Supp. 439 [D. N. J.], affid. 242 F. 2d 344; Wilkerson v. Waterford Park, Cir. Ct. of Hancock County, W. Va., Civil Action No. 3972, affid. without opn., W. Va. Sup. Ct., cert. den. 396 U. S. 906), owner (Rocco v. Saratoga Harness Racing Assn., Sup. Ct., Saratoga County, July 22, 1971), harness driver (Matter of Webster v. Roosevelt Raceway, Sup. Ct., Nassau County, Aug. 18, 1971), groom or trainer (Kimball v. Windsor Raceway Holdings [1972], 3 Ont. 307; Turcotte v. Blue Bonnets Raceway [1972], Que. C. S. 753), or other racetrack employees (Warfield v. New York Racing Assn., N. Y. L. J., July 28,1971, p. 11, col. 8 [Sup. Ct., Queens County]; cf. Adrian Messenger Servs. & Enterprises v. Jockey Club [1972], 2 Ont. 369).
In our view, it does not follow from the Madden and Licata cases that NYRA may, with impunity, exclude a licensed owner and trainer when that action allegedly causes injury. NYRA has virtual monopoly power over thoroughbred racing in the State of New York.* Exclusion from its tracks is tantamount *150 to barring the plaintiff from virtually the only places in the State where he may ply his trade and, in practical effect, may infringe on the State’s power to license horsemen. In contrast to a racetrack proprietor’s common-law right to exclude undesirable patrons, it would not seem necessary to the protection of his legitimate interests that the proprietor have an absolute immunity from having to justify the exclusion of an owner and trainer whom the State has deemed fit to license. (Horse Racing Act, § 9-b, subd. 2, added by L. 1951, ch. 324, § 4.) Accordingly, plaintiff should have his opportunity to prove his allegations in an action for damages and, by the same token, defendant its opportunity to refute them. (See Greenberg v. Hollywood Turf Club, 7 Cal. App. 3d 968; see, also, Martin v. Monmouth Park Jockey Club, 145 F. Supp. 439, 441, supra.) In this regard, it will be plaintiff’s heavy burden to prove that the denial of stall space was not a reasonable discretionary business judgment, but was actuated by motives other than those relating to the best interests of racing generally.
This general principle that the arbitrary action of a private association is not immune from judicial scrutiny has, for example, been applied in instances of a private hospital arbitrarily denying a licensed physician staff privileges (e.g., Greisman v. Newcomb Hosp., 40 N. J. 389; see, generally, Ann., Physician, Surgeon — Hospital Exclusion, 37 ALR 3d 645, 661-663; contra, Leider v. Beth-Israel Hosp. Assn.,11 N Y 2d 205; but see Public Health Law, § 2801-b, subd. 1, effectively limiting the Leider case), and a medical society’s arbitrary exclusion of a licensed physician where there is a showing of “ economic necessity ” for membership and “ monopoly power ” over the profession (e.g., Falcone v. Middlesex County Med. Soc., 34 N. J. 582, 591, 597; see, also, Matter of Salter v. New York State Psychological Assn., 14 N Y 2d 100,106-107 [recognizing the rule that admission was compellable but denying relief on the facts]; see, generally, Ann., Professional Society — Membership, 89 ALR 2d 964; Note, Judicial Control of Actions of Private Associations, 76 Harv. L. Rev. 983, 1087-1095). The situation before us is sufficiently analogous to warrant adaptation of this principle.
On this viewj the interesting “ state action ” question need not be reached or decided. We note, however, that as a limit on the reach of the Fourteenth Amendment, the “ state action ” *151 doctrine is alive and well. (See Moose Lodge No. 107 v. Irvis, 407 U. S. 163; Lloyd Corp. v. Tanner, 407 U. S. 551; cf. Columbia Broadcasting System v. Democratic Comm., 412 U. S. 94, 114-121, esp. at pp. 117-119, opn. of Burger, Ch. J., in which Stewart and Rhenquist, JJ., joined.)
Accordingly, the order appealed from should be modified by deleting the provision converting the action into a proceeding pursuant to CPLR article 78, and, as so modified, should be. affirmed, without costs, the certified question answered in the negative, and the case remitted to the Supreme Court, Nassau County, for trial.
Chief Judge Fuld and Judges Burke, Breitel, Gabrielli, Jones and Wachtler concur.
Order modified, without costs, and case remitted to Supreme Court, Nassau County, for further proceedings in accordance with the opinion herein, and, as so modified, affirmed. Question certified answered in the negative.

 We are advised that in the State there is only one other thoroughbred racetrack with pari-mutuel betting, operated by the Finger Lakes Racing Association, at Canadaigua.