■ HOWARD JACOBSON, Appellant, v NEW YORK RACING ASSOCIATION, INC., Respondent.—In an action against the New York Racing Association, Inc. to recover damages for its failure to allot stall space, plaintiff appeals from a judgment of the Supreme Court, Nassau County, entered June 25, 1974, in favor of defendant, upon a jury verdict. Judgment affirmed, with costs. No opinion. Martuscello, Cohalan, Brennan and Munder, JJ., concur; Rabin, Acting P. J., dissents and votes to reverse the judgment and grant a new trial, with an opinion. Rabin, Acting P. J. (dissenting). I dissent and vote to reverse the judgment and grant a new trial. Howard Jacobson, the plaintiff, is an owner and trainer of race horses; the defendant New York State Racing Association, Inc. (NYRA) owns all of the major race tracks in New York. There are only a limited number of stalls for horses at race tracks and, since the demand exceeds the supply, the NYRA must refuse some applications for stall space. The New York State Racing Commission, a public body, suspended the plaintiff's owner's and trainer's licenses for 45 days for violations of its rules and regulations. Following the plaintiff's reinstatement, the defendant NYRA, a private nonprofit organization with significant State connections, refused to grant him stall space for his horses. Jacobson then instituted this suit, claiming that the refusal to grant him stall space was wrongful in that it was based upon the NYRA's assessment of his character, a determination claimed to be the "sole right of the New York State Racing Commission", and in that the decision to refuse stall space was made "maliciously and wantonly" to punish the plaintiff for his criticism of the NYRA and for his activities in connection with the Horsemen's Benevolent and Protective Association (HBPA), an organization repre-

senting trainers, grooms, and other racetrack employees. The case was previously before this court on the defendant's motion to dismiss the complaint on the ground that it failed to state a cause of action (Jacobson v New York Racing Assn., 41 AD2d 87). It was held that the complaint stated a cause of action, but that the litigation should be converted into a proceeding pursuant to CPLR article 78 to review the NYRA's refusal. The basis of the holding treating the action as an article 78 proceeding was the interrelationship of the State government and the NYRA, which was sufficiently extensive so that "State action was asserted" when the NYRA barred the plaintiff from using its stall facilities (supra, p 93; see Halpern v Lomenzo, 81 Misc 2d 467). Although refusing to dismiss the claim, this court ruled that the conversion to the article 78 proceeding precluded the possibility of damages on the present facts. The Court of Appeals agreed that the complaint was sufficient to state a cause of action, but reversed as to the conversion to an article 78 proceeding, leaving the litigation an action for damages, as commenced (Jacobson v New York Racing Assn., 33 NY2d 144). In so doing, the Court of Appeals outlined the general principles applicable to the trial of the case (pp 149–150): "NYRA has virtual monopoly power over thoroughbred racing in the State of New York. Exclusion from its tracks is tantamount to barring the plaintiff from virtually the only places in the State where he may ply his trade and, in practical effect, may infringe on the State's power to license horsemen. In contrast to a racetrack proprietor's common-law right to exclude undesirable patrons, it would not seem necessary to the protection of his legitimate interests that the proprietor have an absolute immunity from having to justify the exclusion of an owner and trainer whom the State deemed fit to license. * * * Accordingly, plaintiff should have his opportunity to prove his allegations in an action for damages and, by the same token, defendant its opportunity to refute them. * * * In this regard, it will be plaintiff's heavy burden to prove that the denial of stall space was not a reasonable discretionary business judgment, but was actuated by motives other than those relating to the best interests of racing generally." At the trial following the Court of Appeals' decision, the plaintiff urged the jury to conclude that the NYRA's refusal to allot him stall space "was not a reasonable discretionary business judgment" on the two bases stated in the complaint. One of the plaintiff's arguments was that the reason for the refusal of stall space was his criticism of the NYRA and his activities in connection with the HBPA. The officers of the defendant denied this allegation. The court charged the jury "you will find for plaintiff if you find that defendant was arbitrary, or was acting out of malice, or because of his HBPA activities, or the work stoppage, or because it wanted a friendlier HPBA [sic], or because it wanted to punish him, and it was not exercising reasonable business judgment but was actuated by motives other than those relating to the best interests of racing generally." This presented a clear factual issue for the jury's determination and the jury found in favor of the defendant. As to this issue, the plaintiff had his day in court and lost, a result which should not be tampered with on appeal. The plaintiff's second basis for contending that the NYRA's refusal of stall space was wrongful was that the decision was based upon the defendant's personal estimation of his character, and therefore was, in practical effect, an increase in the punishment meted out to him by the State Racing Commission from a suspension of 45 days to a lifetime suspension. Testimony was presented at the trial to the effect that the officials of the NYRA based their refusal on the plaintiff's "previous record", as evidenced by the New York State Racing Commission's findings against him. As to this theory, the plaintiff requested

that the following charge be given to the jury: "The right to decide whether a person is of sufficiently good moral character to race in the State of New York, belongs to the Racing Commission and if the sole reason for the denial of stall space to Jacobson was based upon the NYRA's estimate of his character, their action 'infringes' upon the 'State's power to license horsemen,' and cannot be accepted." However, the trial court refused to deliver this charge, or others of similar import, to the jury. For the reasons which follow, I conclude that the requested charges accurately stated the law in the special circumstances of this case, and that it was reversible error for the trial court to have refused to so charge. The issue presented is whether, considering the function and operation of the commission, as well as the interrelationship between the State and the NYRA, a "reasonable discretionary business judgment" by the defendant may include the defendant's assessment of the plaintiff's "character". It may first be noted that neither the prior decision in this court nor the Court of Appeals' decision specifically answers this question. The Court of Appeals stated (p 150) that, at the trial, "it will be plaintiff's heavy burden to prove that the denial of stall space was not a reasonable discretionary business judgment, but was actuated by motives other than those relating to the best interests of racing generally." However, the Court of Appeals did not address itself to the question of which factors may properly be considered by the defendant in a "discretionary business judgment". As the following statement discloses, the Court of Appeals, while not specifically holding on the question, did recognize and note the problem we are concerned with: "Exclusion from [the defendant's] tracks is tantamount to barring the plaintiff from virtually the only places in the State where he may ply his trade and, *in practical effect, may infringe on the State's power to license horsemen" (Jacobson v New York Racing Assn.,* 33 NY2d 144, 149–150 [emphasis supplied]). The power to license owners and trainers is given by statute to the State Racing Commission (L 1926, ch 440, amd L 1951, ch 324, amd L 1952, ch 77, § 1, amd L 1953, ch. 773, § 2). Under the statute, it is the racing commission which has the power to review the "character and general fitness" of an applicant seeking a license or a license renewal, and the power to revoke or suspend, if it finds that the licensee has been convicted of a crime, or has been guilty of fraud, or other stated violations. The statute also provides for a hearing on notice to the licensee, who is entitled to be represented by counsel, to cross-examine witnesses, etc. The racing commission must maintain a record of the hearing, including its findings, and such findings are reviewable by an article 78 proceeding (L 1951, ch 324, amd L 1958, ch 30, amd L 1962, ch 311, § 31; 9 NYCRR 4002.10). From this statutory scheme it is clear that the Legislature addressed itself to the clash between the individual's interest in earning a living through horseracing and the public interest in preserving the integrity of the enterprise. The Legislature attempted to balance the competing interests by empowering the State Racing *Commission* to judge the character and record of those involved in racing and by granting those judged certain procedural safeguards, including the important right to review. While regulations issued by the commission place upon racing associations, such as the NYRA, "the burden of carefully screening its *patrons,* and excluding or expelling any undesirable persons", such as convicted bookmakers *(People v Licata,* 28 NY2d 113, 115 [emphasis supplied]; see, also, 9 NYCRR 4003.46), there is no delegation to the NYRA of the power to license, i.e., to determine who is fit and who is not fit to engage in the various horseracing occupations, such as owner or trainer. Of course, the defendant did not take any action with regard to the plaintiff's formal "license". However, if a decision is made to deny stall

space to a trainer, virtually barring him from working as a trainer in the State, and that decision is made on the basis of his moral character and fitness to race, the decision is a "licensing" decision both in function and effect. In the present case, it is also a "licensing" decision which is contrary to the determination of the commission and, as to which, the plaintiff is deprived of the safeguards of notice, hearing and appeal, which the Legislature provided as a counterweight to the awesome licensing power. Had the racing commission imposed a penalty of license revocation, the plaintiff would have been able to appeal the severity of the penalty as well as the commission's findings as to violations. The plaintiff would have no such possibility of appeal with regard to a racing association's refusal to grant him stall space, even if that refusal were based on the same information as the commission's findings and had the same effect as a revocation of license (see *Jacobson v New York Racing Assn.,* 33 NY2d 144, *supra,* modfg 41 AD2d 87). When the aggravating factor of the strong connections between the NYRA and the State is added to the problem, it becomes clear that permitting the NYRA to hinge its allotment of stall space on "character and general fitness" would allow important substantive rights of the plaintiff to vanish in a game of names and labels. On the other hand, it is conceded by the parties that there are more applicants for stall space than there are stalls. Therefore, someone must be disappointed, and, as has been emphasized, such disappointment can have the same severe economic impact as a failure to receive a license. The fact that the defendant's decisions as to the allotment of stall space have dramatic ramifications on the fortunes of those requesting space certainly does not eliminate the need for such decisions. Despite the unfortunate consequences to those excluded, the defendant may and must base such decisions upon its "reasonable discretionary business judgment". If the decision to refuse stall space is based on a judgment as to the estimated income to be gained, the quality of the entry, the skill of the applicant, the enjoyment of the patrons, etc., it would be based on a "reasonable discretionary business judgment" and would insulate the defendant from any legal liability. Whatever may be the case if an enterprise is entirely self-policing, where the Legislature has created a State commission and has given it power to grant, revoke and suspend licenses, a judgment based upon the "character and general fitness" of the applicant is a *licensing* and not a *business* decision. In the present case, it was for the jury to determine whether, and to what extent, the NYRA's refusal to grant the plaintiff stall space was based upon an estimation of his "character and general fitness", as previously passed on by the racing commission. The plaintiff was therefore entitled to a charge instructing the jury that it should find for the plaintiff if it determined that the defendant's estimate of the plaintiff's character and general fitness was the controlling factor in its refusal to allow stall space to him.* The plaintiff requested appropriate charges addressed to this issue, all of which were refused by the court, an error requiring reversal and a new trial.

---

* Conversely, the defendant was entitled to a charge instructing the jury that it should find for the defendant if it found that the refusal to allot stall space was either (1) not based on an estimate of the plaintiff's character and general fitness, or (2) based in part on the defendant's estimate of the plaintiff's character and general fitness, but that these factors were not necessary to the decision, the refusal being sufficiently explained by other factors.