Jasen, J.
(concurring in part, dissenting in part). I differ with the majority as to the extent of the New York Racing Association’s right to exclude licensees from it premises. In my view, three issues must be evaluated in order to decide this appeal. They are: (1) to what extent has the NYRA’s common-law right to exclude persons from its racetracks been compromised by its State franchise which gives it a virtual monopoly over thoroughbred racing; (2) when it exercises that right, what safeguards are required by due process to protect the petitioner’s property rights in his license; and (3) at what point must this right yield totally to the State’s power to license.
In Jacobson v New York Racing Assn. (33 NY2d 144), we recognized that because of the NYRA’s monopolistic nature, its common-law right to exclude persons did not afford it absolute immunity when, that right was exercised against persons licensed by the State to work at racetracks. “Exclusion from its tracks is tantamount to barring the plaintiff from virtually the only places in the State where he may ply his trade and, in practical effect, may infringe on the State’s power to license horsemen.” (Jacobson v New York Racing Assn., supra, at pp 149-150.) Thus, we held that the plaintiff could seek damages if he could prove that the NYRA wrongfully barred him from its tracks and thereby interfered with his license. The case being before *244 us on the limited basis of a certified question as to the propriety of an action for damages against the NYRA, we did not address what would be required of the NYRA when it believed it had a reasonable basis for excluding a licensee. In order to determine what action the NYRA is required to take and is allowed to take, I believe we must evaluate the various rights and authorities involved.
The unique nature of the NYRA affects the rights it possesses. It is a nonprofit racing association which, pursuant to a franchise granted by the State, conducts horse racing and related betting activities at three of the four thoroughbred racetracks in this State. (L 1926, ch 440, as amd by L 1976, ch 840.) The statute authorizing such franchises requires that they be regulated and controlled by the New York State Racing and Wagering Board. (L 1926, ch 440.) That means that although the NYRA has the form of a not-for-profit corporation, its rights and privileges as a corporate entity are subject to regulation and limitation by that Board in exchange for its monopolistic status. Thus, in Jacobson, we held that its immunity from suit when it excluded a licensed person was not absolute but was limited to those cases where it could show that the exclusion was related to the best interests of racing generally. We concluded, however, that even though the NYRA was not immune from suit, the burden would be on the plaintiff to establish that in barring him from their tracks, the NYRA was not motivated by the best interests of racing or that it had no legitimate business reason for doing so. (Jacobson v New York Racing Assn., supra, at p 150.) In so limiting our holding, we clearly recognized that the NYRA was subject to Board regulation and was limited by policy from acting in any manner which would infringe on a person’s license unless that action could be justified.
The implication of our holding was that any action by the NYRA was subject to further review and regulation by the Board. Anything less would abrogate the Board’s statutory authority over all such franchises. Similarly, to allow the NYRA to take an action against a licensee which amounted, because of the NYRA’s monopoly, to a de facto revocation of that license would also cause the Board’s *245 licensing authority to be abrogated. Since this petition seeks, rather than damages, an injunction to keep the NYRA from interfering with the Board’s licensing power, I believe we must decide at what point the Board’s licensing authority takes priority over the NYRA’s rights to run its racetracks and exclude persons it believes harm its enterprise. In determining that point, it must be recognized that the authority to license jockeys, trainers and owners is vested by the Legislature in the Racing and Wagering Board. (L 1926, ch 440, as amd by L 1952, ch 77.) When that Board determines that they are entitled to a license, it decides that they are qualified to work at the racetracks in this State. The Board also is authorized to suspend a licensee or revoke a license if it determines, after a hearing, that the licensee has violated the rules and regulations concerning appropriate conduct. (L 1926, ch 440, as amd by L 1951, ch 324.) Given this broad authority, it is the Board which should make the final determination on a licensee’s status.
The further implication from this is that only the Board can take action involving a license because that license is a property interest and the licensee is entitled to certain due process rights before that property interest is taken. This accounts for the statutory mandate and Board’s regulations which require notice and a hearing before a license can be revoked. (L 1926, ch 440, as amd by L 1951, ch 324.)
Underlying our holding in Jacobson, then, are three principles: First, that by accepting its monopoly, the NYRA accepted certain limitations on the common-law rights a proprietor of a private enterprise enjoys; secondly, that a license granted by the State Racing and Wagering Board to work at racetracks is a property right protected by requirements of due process; finally, that the ultimate resolution of a person’s fitness to hold a license and to be involved in horse racing in this State lies with the agency charged with overseeing the sport and business of horse racing. The intertwined nature of these rights, therefore, does effect the NYRA’s ability to bar a licensed jockey from its tracks.
In this case, I would hold that the NYRA can exercise its right to exclude in order to protect its property interests in *246 racing, but only to the extent of temporarily barring the petitioner from its racetracks. To do so, it would be required to have a valid reason and employ some due process safeguards. At that point, because anything other than a temporary suspension pending a hearing would impose on a licensee’s property rights in that license and in turn interfere with the State’s licensing power, I would require the NYRA to refer the matter to the Racing and Wagering Board. That agency can then afford the licensee the additional protection of a hearing before an impartial panel before resolving his continuing status. Assuming the complaint brought by the NYRA is proven at the hearing, it will then be the licensing board which will decide the appropriate sanction — suspension for a period of time or revocation of the license. The licensee will not have been deprived of his property rights in that license until he has been afforded complete due process protections. Similarly, the Board would retain its control over licensing, but the NYRA’s interest in maintaining the integrity of racing would be protected because once it had good cause to believe that the licensee was acting in an improper manner, it could exercise its common-law right to exclude. It would thereby protect its proprietary interests and fulfill its obligation to act in the best interest of racing. I recognize that the NYRA could seek an immediate suspension at the time of the incident from the Board steward present at the track. (9 NYCRR 4022.12.) The fact that an alternative remedy is available I do not find dispositive of the issues presented by this case, particularly because some reasons for exclusion may occur or come to light at times other than when races are being run and the steward is present. Moreover, that regulation specifically provides: “Nothing in this section shall be construed to limit any racing association or track licensee’s power to exclude or deny any individual from its grounds or privileges thereon.” (9 NYCRR 4022.12.)
I would agree with the majority, however, that it flows naturally from the NYRA’s unique status and from the imposition of the requirement that good cause must exist for the NYRA to exclude a licensee that the NYRA must act in a manner that comports with due process when it *247 temporarily bars the licensee. Since the Board will afford the licensee a full and fair hearing, I believe the only requirements that should be imposed on the NYRA before it can bar a licensee from its track are that it give the licensee prompt notice of the charges, an opportunity to review the basis of those charges and that it immediately refer those charges to the Board.
Accordingly, I would modify the order of the Appellate Division by granting the petition to the extent that it barred the NYRA from interfering with the State Racing and Wagering Board’s licensing power and by requiring that any further disciplinary hearing be brought before that Board.