Chief Judge Cooke
(dissenting in part). I cannot agree with the majority’s conclusion that under the State’s statutory scheme governing the issuance and revocation of licenses to participants in thoroughbred horse racing meets, a private franchisee retains an independent right to exclude licensees in good standing from its tracks. The Legislature vested exclusive authority over licensing in the New York State Racing and Wagering Board (Board). Inasmuch as the New York Racing Association (NYRA), a private franchisee, excluded petitioner for reasons that directly infringe on the Board’s licensing power, such exclusion was improper.
In creating the Board, the Legislature stated in broad and inclusive terms that the Board “shall have general jurisdiction over all horse racing activities * * * in the state and over the corporations, associations, and persons engaged therein” (Racing and Wagering Board Law, § 201, subd 1, L 1973, ch 346, § 3). Moreover, consistent with this broad power, the Board, “[f]or the purpose of maintaining a proper control over [thoroughbred horse] race meetings,” was expressly granted the exclusive power to license the various participants in these meets (see L 1926, ch 440, § 9-b, subd 1, as added by L 1951, ch 324, as amd by L 1952, ch 77, § 1, L 1953, ch 773, § 2, L 1956, ch 12, § 1, L 1957, ch 539, § 1, L 1958, ch 30, § 1, L 1960, ch 828, § 1, L 1968, ch 548, L 1973, ch 208, § 1, L 1981, ch 103, § 167).
*248 The issuance of such licenses is to be based on the Board’s determination that the “financial responsibility, experience, character and general fitness of the applicant are such that the participation of such person will be consistent with the public interest, convenience or necessity and with the best interests of racing generally” (L 1926, ch 440, § 9-b, subd 2, as added by L 1951, ch 324, as amd by L 1952, ch 77, § 1). As a part of this power, the Board “may refuse to issue or renew a license, or may suspend or revoke a license” based on detailed criteria bearing on an applicant’s or a licensee’s moral fitness.[1] Pursuant to its authority, the Board has promulgated regulations setting forth various restrictions on licensees (see, e.g., 9 NYCRR 4040.1-4040.15), detailing corrupt practices (see 9 NYCRR 4042.1), and empowering the Board’s individual stewards to exclude or suspend persons from track grounds (see 9 NYCRR 4022.12).[2]
The Board’s members are public officers (see Racing and Wagering Board Law, § 201, subd 2, L 1973, ch 346, § 3) and no member of the Board, or its officers, officials, or employees may have an interest in the “operations of any *249 licensee or franchisee of the board” (Racing and Wagering Board Law, § 201, subd 7). The NYRA, on the other hand, is merely a private, nonprofit franchisee, empowered, subject to the Board’s continuing jurisdiction, to “conduct a race course or race meetings for running races or steeplechases or hunt meetings” (L 1926, ch 440, § 7-a, as added by L 1955, ch 812, § 2). The officers of the NYRA are not public officers; they are not sworn or removable as such. The Legislature permitted the NYRA’s incorporation solely for the purpose of “conducting races and race meetings, improving the racing facilities, increasing the conveniences available to patrons and serving the best interest of racing generally” (L 1926, ch 440, § 1-a, as added by L 1955, ch 812, § 1). Nowhere under the statutory scheme is the Board’s licensing power and concomitant power to revoke or suspend licenses limited or derogated in favor of the NYRA. The majority, nevertheless, finds that the NYRA in effect shares with the Board the power to suspend Board licensees from participating in track meets by virtue of a “common-law right of exclusion” (p 237).
When this court, in Jacobson v New York Racing Assn. (33 NY2d 144), affirmed a common-law right of the NYRA, as a proprietor, to exclude patrons from its premises and to allocate or deny its limited stall space to licensees in accordance with the exercise of reasonable, discretionary business judgment, it also noted that “[exclusion from its tracks is tantamount to barring [an individual] from virtually the only places in the State where he may ply his trade and, in practical effect, may infringe on the State’s power to license horsemen” (id., at pp 149-150). In Jacobson, the NYRA was required to justify its business decision to deny stall space because its action would have the effect of excluding licensees. The court did not countenance the outright exclusion of licensees from participation whenever and for no other reason than that such exclusion would, in the judgment of the NYRA, further the best interests of racing generally and constitute a reasonable, discretionary business judgment.
*250 Whatever may have been the extent of the NYRA’s common-law power to exclude persons from its tracks, it certainly is curtailed by the Legislature’s express delegation of licensing power to the Board, and by the Legislature’s exposition of explicit criteria for evaluating license revocations. In Matter of Fink v Cole (302 NY 216), this court struck down as an improper delegation of legislative power statutes that conferred upon the Jockey Club, a private corporation, the power over issuance and revocation of licenses to jockeys (id., at p 225). The Legislature by enacting these statutes recognized, that for a private body to have the power to effect licensing decisions, an express statutory grant was necessary. In other words, upon assumption by the Legislature of the power to regulate racing generally, private bodies were impotent to intrude into licensing and disciplinary matters.
The majority’s interpretation of the NYRA’s power to exclude gives that private franchisee the functional equivalent of a power to revoke or suspend licenses issued by the Board. Presumably, under this holding, if the NYRA should decide that activities on the part of a licensee permit it to invoke its common-law power to exclude licensees from its track facilities in the best interests of racing, it may do so despite a contrary plenary determination by the Board that no discipline is necessary. So long as the NYRA’s exclusion policy cannot be said to have been motivated by anything other than advancing the best interests of racing and constitutes a reasonable exercise of business judgment, its determination will not be disturbed by the courts regardless of whether conflicting factual or policy findings are made by the Board. It is unrealistic to assume, as the majority does (see pp 238-239), that such an inconsistent result could or would be remedied by the Board through the extraordinary act of revoking the NYRA’s franchise, thereby disrupting all racing at the Belmont, Aqueduct and Saratoga racetracks and causing economic hardship to the many innocent persons associated with those establishments.
The State’s interest in entrusting to a single public body the power to determine the qualifications of potential and present licensees, thereby ensuring responsible and consis *251 tent policy, outweighs any harm that might accrue to the NYRA or similarly situated franchisees by denying to them a concurrent power. When an infraction of racing regulations such as has been alleged here is brought to the NYRA’s attention, it need only refer the matter to the Board, which is charged with then taking appropriate action. A Board representative, a steward, is present on racetrack grounds at all times during racing meets (see 9 NYCRR 4022.3) and is expressly empowered to exclude from the facility for up to 60 days any person who acts in a manner that is detrimental to the best interests of racing (see 9 NYCRR 4022.12). Moreover, this regulation requires that the Board’s steward, before taking any action, consult with the NYRA’s steward and afford him or her an opportunity to make recommendations (9 NYCRR 4022.12).
Any disruption or irregularity, therefore, can be swiftly and effectively remedied, pending a Board hearing. Thus, extending to the NYRA any concurrent power to exclude licensees, even on emergency basis, would be unnecessary and superfluous.[3] It is also noteworthy that the NYRA’s action here was not a temporary exclusion to meet an emergency, but was rather an attempt to permanently exclude petitioner from its tracks.
Inasmuch as the NYRA has no disciplinary power to exclude licensees, any further action against petitioner should be taken only by the Board. Therefore, the order of the Appellate Division should be affirmed in all respects.
Judges Jones, Wachtler and Fuchsberg concur with Judge Meyer; Judge Jasen concurs in part and dissents in part and votes to modify in accordance with his opinion in *252 which Judge Simons concurs; Chief Judge Cooke dissents in part and votes to affirm in another opinion.
Order modified, with costs to appellant, in accordance with the opinion herein and, as so modified, affirmed.

. Specifically, the Board may deny, suspend, or revoke a license “if it shall find that the applicant * * * has been convicted of a crime in any jurisdiction, or is or has been associating or consorting with any person who has or persons who have been convicted of a crime or crimes in any jurisdiction or jurisdictions, or is consorting or associating with or has consorted or associated with bookmakers, touts, or persons of similar pursuits, or has himself engaged in similar pursuits, or is financially irresponsible, or has been guilty of or attempted any fraud or misrepresentation in connection with racing, breeding or otherwise, or has violated or attempted to violate any law with respect to racing in any jurisdiction or any rule, regulation or order of the [Board], or shall have violated any rule of racing which shall have been approved or adopted by the I Board], or has been guilty of or engaged in similar, related or like practices” (L 1926, ch 440, § 9-b, subd 2, as added by L 1951, ch 324, as amd by L 1952, ch 77, § 1).

. To the extent that the regulation providing that “[ nlothing in this section shall be construed to limit any racing association or track licensee’s power to exclude or deny any individual from its grounds or privileges thereon” (9 NYCRR 4022.12), maybe construed as authorizing the NYRA to directly exclude licensees from its tracks, it constitutes an invalid delegation by the Board of its power to effect licensing decisions. Nowhere in the statutory framework governing the issuance and revocation of licenses is the Board permitted to delegate to a private racing association the power to exclude licensees. The Board’s interpretation of its statutory power as evidenced by this regulation is entitled to no deference (see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). Moreover, as discussed below, inasmuch as the power to exclude is tantamount to the power to effect licensing decisions, the Board cannot under the State Constitution delegate the power to exclude (see Matter of Fink v Cole, 302 NY 216, 224-225).

. Similarly, there is no need to fashion a broad emergency power to be invoked by the NYRA to meet those situations when no Board steward is present at the track. The Board has provided that one of its representatives shall be responsible for track activities at all times. Its regulations state that “Idluring the absence or inability to act of an official steward of the [Board] * * * the powers and duties of such steward shall be exercised and performed * * * by a member of the [Board] designated by the [Board 1 for that purpose” (9 NYCRR 4022.5). Thus, in the event that an infraction by a licensee arises or comes to the NYRA’s attention when no Board steward is present or able to act, a member of the Board shall act in his or her stead. Moreover, if no steward is present because no races are being held, it is almost certain that there would be no emergency.