Honorable John Van Lindt Chairman Racing and Wagering Board
Your counsel by letter has advised us that certain corporations, partnerships or syndicates are or may have engaged in the selling or offering of securities investments in their racehorses in violation of the registration requirements of Article 23-A of the General Business Law, although there has been no formal adjudication to that effect. Based upon that letter and a telephone conversation with this office, a question has arisen whether the New York State Racing and Wagering Board ("Board") is authorized to make an independent determination whether these corporations, partnerships or syndicates are in fact in violation of Article 23-A, and if so, whether it may refuse to grant an owner's racing license to individual shareholders, partners or members of such corporations, partnerships or syndicates based upon its affirmative finding of the existence of such a violation.
Article 23-A requires the filing of a registration statement with the New York State Department of Law before the offer or sale of securities may be made to the public within or from the State of New York (General Business Law, § 359-e[3]). In addition, all salespersons employed for such purpose are required to register (id., § 359-e[3]), [11]). Under section 359-e(2) and (8), the filing of a "State Notice" and "Further State Notice" with the Department of State may also be required. The purpose of the Article is to protect the public from fraud in the sale of securities (Charles H. Greenthal Co., Inc. v Lefkowitz, 32 N.Y.2d 457
[1973]).
Syndicates, partnerships or corporations selling or offering securities which are investment interests in racehorses must register with the Department of Law under section 359-e of the New York General Business Law (id., § 359-e[3]). If these entities fall within the scope of General Business Law, § 359-f(2), they may apply to the Attorney General for a discretionary exemption. For example, section 359-f(2)(d) authorizes the Attorney General in his discretion to grant an exemption if the securities are to be offered and sold in a limited offering to not more than forty persons. If the offering of securities is being made only to New York residents on an intrastate basis, General Business Law, § 359-ff is applicable and there must be compliance with that section and the rules and regulations promulgated thereunder. A violation of any provision of Article 23-A is a misdemeanor (id., § 359-g[2]).
The Racing, Pari-Mutuel Wagering and Breeding Law, enacted by chapter 865 of the Laws of 1982, effective April 1, 1983, repealed Title 21, §§ 7901, et seq., of the Unconsolidated Laws, "Racing", established the New York State Racing and Wagering Board as the successor to the State Racing Commission, the State Harness Racing Commission, the State Quarter Horse Racing Commission and the State Off-Track Pari-Mutuel Betting Commission, and transferred all of the powers, duties and functions of the commissions under Title 21 to the Board (Racing, Pari-Mutuel Wagering and Breeding Law, § 101[1]). The statute vests general jurisdiction in the Board over all horse racing activities and all pari-mutuel betting activities, both on-track and off-track, in the State and over the corporations, associations, and persons engaged in those activities (ibid.).
Under its regulatory power, the Board is authorized to license owners of racehorses participating in thoroughbred, harness and quarter horse race meets (id., §§ 213, 309, 409, formerly Unconsolidated Laws, §§ 7915, 8010 and 8040-b, respectively). The regulations of the Board limit the number of individuals who may participate in the ownership, whether corporate or otherwise, of racehorses and require each such individual to obtain an ownership license from the Board (9 NYCRR §§ 4002.9[b][1] and 4107.2[a]). Thus, in instances where a racehorse is owned by a corporation, partnership or syndicate, each individual shareholder, partner or member of such corporation, partnership or syndicate must obtain an ownership license (ibid.). One of the purposes of these licensing regulations is to enable the Board to maintain proper control over racetrack purses and prizes, which by statute may be awarded only to owners of racehorses (Racing, Pari-Mutuel Wagering and Breeding Law, §§ 204, 213, 304, 309, 404, 409).
The standards employed by the Board in determining whether to grant or deny an owner's license are identical to those previously employed by its statutory predecessors under Unconsolidated Laws, §§ 7915, 8010 and 8040-b. (See, id., §§ 213, 309, 409.) In general, the Board may not grant a license unless it makes affirmative findings that the financial responsibility, experience, character and general fitness of the applicant are such as to be consistent with the best interests of racing and the public interest (id., §§ 213[2]), 309[2], 409[2]; Matter ofFink v Cole, 1 N.Y.2d 48 [1956]). If the Board finds that the applicant fails to meet any of these conditions, it is required to deny the application for licensure (ibid.. In addition, the Board may refuse to grant a license if it finds the existence of any one of several defined factual situations, such as where the applicant or licensee has been convicted of a crime, or has been guilty of or attempted fraud, or has engaged in specified illegal activities (ibid.; Jacobson v New YorkRacing Association, Inc., 49 A.D.2d 634 [2d Dept, 1975]).
In commenting upon the scope of the licensing power of the State Racing Commission under former Unconsolidated Laws, § 7915, the Court of Appeals in Matter of Fink v Cole, supra, stated:
 "The expressed intention of the Legislature as reflected by the statutes as well as the public policy of the State dictate a review of all information available to the commission * * *.
* * *
 "In arriving at a determination whether to grant or deny a license, the commission may seek and rely upon any facts that exist, regardless of their source so long as they are reliable and trustworthy * * *. Under this class of licensing statute, all relevant information known to the commission must be considered and reconsidered."
Since, under the present statute, the Board has succeeded to all of the powers of the State Racing Commission, we believe that the scope of the Board's licensing power is as broad as the licensing power previously exercised by the Commission as articulated in Cole (Racing, Pari-Mutuel Wagering and Breeding Law, § 101[1]).
We think it is clear from the foregoing statutory standards as well as from the language of Cole that the Board, in carrying out its licensing function, is authorized to make independent factual determinations as to any matters relevant to an applicant's suitability for licensure (id.,
§§ 213, 309, 409; Matter of Fink v Cole, supra). In our view, the fact that the corporation, partnership or syndicate in which an individual applicant has an interest is or may have engaged in the selling or offering of ownership interests in racehorses in violation of Article 23-A may be relevant to the fitness of the applicant as well as to the Board's jurisdiction over racehorse ownership. We are of the opinion, therefore, that given the broad scope of its licensing power, the Board is authorized to make an independent factual determination as to the existence of a violation of Article 23-A for the purpose of determining the fitness of an applicant for licensure (ibid.).
A finding by the Board of a violation of Article 23-A must be supported by substantial evidence (Matter of Cantor v New York State Racing andWagering Board, 73 A.D.2d 544 [1st Dept, 1979]). If the Board makes such a finding, under the applicable standard it may deny licensure to an individual shareholder or member if it determines that, as a result of the violation of Article 23-A, the participation of that individual in racing would be inconsistent with the best interests of racing and the public interest (Matter of Fink v Cole, supra; Racing, Pari-Mutuel Wagering and Breeding Law, §§ 213[2], 309[2], 409[2]). That is essentially a factual determination wholly dependent upon the circumstances of each particular case. Relevant to the Board's determination of that issue, we believe, would be such factors, among others, as the culpability of the applicant for the violation of Article 23-A, whether the selling of ownership interests in racehorses is in violation of the Board's regulations or impedes the Boards's control over racehorse purses and the extent of harm to the public interest (Racing, Pari-Mutuel Wagering and Breeding Law, §§ 204, 213, 304, 309, 404,409; 9 NYCRR §§ 4002.9[b][1] and 4107.2[a]). In making this determination, it appears that the Board may properly give consideration to State public policies expressed in other statutes (Matter of Cantor,supra).
A determination of the Board denying a license must have a reasonable basis — that is, the action of the Board cannot be arbitrary or capricious (Matter of Fink v Cole, supra). Thus, as long as there is a reasonable ground for refusal of a license, the determination of the Board will be upheld (ibid.).
We conclude that the Board may refuse to grant an owner's license to an individual shareholder, partner or member of a corporation, partnership or syndicate which it determines is selling or offering securities investments in racehorses in violation of Article 23-A of the General Business Law, provided it reasonably finds that the licensure of such individual would be inconsistent with the best interests of racing and the public interest.