Lauriat, J.
The plaintiff, Foxboro Harness, Inc. (“Foxboro”), has appealed, pursuant to G.L.c. 30A, §14, from a decision of the defendant, Massachusetts State Racing Commission (“the Commission”), determining that Foxboro arbitrarily excluded the horses of a licensed trainer Robert Beauregard (“Beauregard”) from races at its racetrack, and directing Foxboro to accept Beauregard’s entries.[1] For the reasons which follow, the Commission’s decision is affirmed.
BACKGROUND
Foxboro conducts harness horse racing at Foxboro Park pursuant to a license issued by the Commission. (R. II, 2-3.) Beauregard has been licensed by the Commission as a trainer of harness horses from 1983 to the present.[2] Id. at 3. Throughout the 1992 racing season, Beauregard raced horses at Foxboro. (R. II, 5.) At the invitation of Larry Miller (“Miller”), the Foxboro Racing Secretary, Beauregard returned to Foxboro and raced horses from May through September 1993. (R. I, 65.)
On April 26, 1994, Miller advised Beauregard that Foxboro was accepting Beauregard’s entries for upcoming races in Foxboro. (R. I, 82.) On April 27, 1994, an affidavit executed by Beauregard was introduced at a deposition in a civil lawsuit involving Foxboro. Id. at 82-83. Foxboro representatives were present at the deposition. Id. at 839 (R. II- 4.)
On April 28, 1994, Miller informed Beauregard that Foxboro was not accepting his entries as a result of a “management” decision. (R. II, 4.) On May 9, 1994, Beauregard sent a letter to the Commission in which he claimed that the Foxboro management’s decision not to accept his entries was based solely on the fact that he had provided a statement in a civil lawsuit involving Foxboro. (R. Ill, 15-17.) By letter dated May 20, 1994, the Commission notified Beauregard and Foxboro management that it had scheduled a hearing on Beauregard’s complaint for June 8, 1994. (R. Ill, 14.)
At the hearing, Richard P. Dalton (“Dalton”), President ofFoxboro, testified that he, rather than Miller, had made the decision not to do business with Beauregard.[3] Dalton denied any knowledge of Beauregard’s affidavit at the time he made his decision to reject Beauregard’s entries. (R. 1,20-21, 39-40.) Dalton testified that he rendered his decision, at least in part, on Beauregard’s United States Trotting Association (“USTA”) record. (1,18-19.) However, Dalton testified that he could not recall the nature of the violations on the USTA record, although he allegedly reviewed the USTA record three weeks prior to the hearing. (R. I, 25.)
In fact, Beauregard’s USTA record contained five violations. (R. Ill, 19-20). After being refreshed as to the nature of the violations, Dalton conceded that three of the infractions[4] did not threaten the integrity of racing or the reputation ofFoxboro. (R. I, 44-45.) Beauregard’s other infractions were for racing a horse without Phenylbutazone and a violation involving a medication procedure. (R. II, 19.) Beauregard testified that the former violation resulted from a failure to file the proper paperwork. (R. I, 59.) Dalton admitted that he did not know the nature of the latter violation. (R. I, 47.)
Dalton testified that he placed more emphasis on Beauregard’s reputation than upon his USTA record. (R. I, 38.) Dalton testified that several persons had informed him that one of Beauregare’s horses had broken loose from a stall “with an extension cord taped to its neck.” (R. I, 25-26.) Dalton inferred that Beauregard was “prodding” the horse. (R. Ill, 26, 28.) Dalton, however, could not recall the names of any persons who related this story to him, when he learned of it, or when or where it allegedly occurred. (R. I, 26, 35, 52.) Beauregard denied knowledge of or involvement in the alleged incident. (R. I, 60-61.)
Counsel for Foxboro further suggested that Foxboro acted out of concern that Beauregard was involved with illegal hypodermic needles. (R. I, 90.) Foxboro, however, presented no evidence on this point and Beauregard denied any involvement with such needles. (R. I, 61, 86.)
After the hearing, the Commission found that: (1) Foxboro did not substantiate its allegation that Beauregard was involved in the alleged extension cord incident (R. II, 6); (2) Foxboro had produced no evidence that anyone actually had a negative perception of Beauregard, id.; (3) Beauregard’s record was “unremarkable” and contained only “minor violations”; and (4) Foxboro had produced no evidence to support the allegation that Beauregard was involved with hypodermic needles (R. II, 6). Accordingly, the Commission *524 concluded that Foxboro’s decision to refuse Beauregard’s entries was “arbitrary and capricious” and not an exercise of “reasonable business judgment.” (R. II, 9.) Foxboro now contends that the Commission applied an erroneous standard in its review of Foxboro’s decision and that the Commission’s decision was not supported by substantial evidence.[5]
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. State Bldg. Code Comm’n, 11 Mass.App.Ct. 333, 334 (1981), citing Almeida Bus Lines, Inc. v. Department of Pub. Utils., 348 Mass. 331, 342 (1965). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416,420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988); Quincy Hosp. v. Labor Relations Comm’n, 400 Mass. 745, 748-49 (1987). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm'n, 385 Mass. 651, 657 (1982).
Foxboro contends that the Commission erroneously applied an arbitrariness standard in reviewing Foxboro’s decision to exclude Beauregard’s entries. Both parties agree that Catrone v. State Racing Commission, 17 Mass.App.Ct. 484 (1984), is the controlling Massachusetts case in this area.
In Catrone, the Appeals Court acknowledged that “Massachusetts decisions as yet have not determined the extent to which a racetrack has power to exclude licensed owners and trainers.” Id. at 489. Foxboro, in its memorandum, relies on this quotation and urges the court to conclude that a racetrack has “unfettered discretion” to exclude a trainer. However, in Catrone, the Appeals Court affirmed the Commission’s exercise of jurisdiction over a racetrack’s decision to exclude a licensed trainer and the Commission’s application of an arbitrary and capricious standard. Id..at 485. The Court held that as a licensee, a racetrack “must use reasonable business judgment in its . . . operation.” Catrone, supra at 492, citing Phillips v. Youth Dev. Program, Inc., 390 Mass. 652, 656-57 (1983). Thus, contrary to Foxboro’s assertions, the Court did not purport to adopt an “unfettered discretion” standard for the Commission when reviewing the conduct of racetracks. Accordingly, the court concludes that the Commission did not err in reviewing Foxboro’s conduct against an arbitrary and capricious standard and in determining that Foxboro’s decision was “not reasonable and was not based on sound business judgment.” (R. II, 9.)[6]
Foxboro further contends that the Commission’s decision was not supported by substantial evidence. “Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.” Bournewood Hosp., Inc. v. Massachusetts Comm’n Against Discrimination, 371 Mass. 303, 317 (1976), citing G.L.c. 30A, §1(6).
At the hearing, Foxboro alleged that it relied on several factors in excluding Beauregard. Foxboro testified that it relied most heavily on the alleged “extension cord” incident. However, the Commission could reasonably have found that the “extension cord” story was unsubstantiated and, thus, unpersuasive. Foxboro identified no witnesses to the event, it did not know when or where it took place, and it did not know when it learned of the incident. Further, while Foxboro asserted that Beauregard had a bad reputation, it could identify no one with a negative perception of Beauregard. Foxboro also alleged that it relied on Beauregard’s USTA record, but Dalton conceded that he couldn’t recall the nature of the violations. Finally, Foxboro’s counsel suggested that Beauregard was involved with illegal hypodermic needles, but could produce no evidence relating to this alleged activity.
Moreover, there was uncontroverted evidence that on April 26, 1994, Miller accepted entries from Beauregard; on April 27, 1994, Beauregard’s affidavit was introduced into evidence at a deposition at which Foxboro representatives were present; and on April 28, 1994, Miller informed Beauregard that Foxboro would not accept his entries due to a “management” decision. Although Dalton denied knowledge of the affidavit, the Commission could reasonably have rejected this portion of his testimony as incredible. An agency may make determinations as to the credibility and weight of the testimony at an administrative hearing. Number Three Lounge, Inc. v. Alcoholic Beverages Control Comm’n, 7 Mass.App.Ct. 301, 309 (1979); Maddocks v. Contributory Retirement Appeal Bd., 369 Mass. 488., 495 (1976).
The court therefore concludes that the Commission could reasonably have found that Foxboro’s alleged grounds for excluding Beauregard were pretextual. Thus, the Commission’s conclusion that Foxboro’s decision was arbitrary and not based on sound business judgment is supported by substantial evidence in the record. Accordingly, the Commission’s decision is affirmed.
ORDER
For the foregoing reasons, the Plaintiff Foxboro Harness, Inc.’s Motion for Summary Judgment is DENIED. The decision of the Massachusetts State Racing Commission is AFFIRMED.

Foxboro has fashioned its G.L.c. 30A, §14 appeal in the form of a motion for summary judgment.

Beauregard is also licensed in New York, New Jersey, Pennsylvania, and Maine. (R. II, 4-5.)

Dalton was the only individual to testify at the hearing on behalf of Foxboro.

Nhe three infractions were as follows: (1) racing a horse without a properly licensed owner; (2) having his horse on the track after horses were called off; and (3) scratching a horse without permission. (R. I, 44-45.)

Foxboro also appears to suggest that the Commission did not have jurisdiction to review Foxboro’s decision to exclude Beauregard’s entries, although it does not devote much of its brief to this argument. In Catrone v. State Racing Commission, 17 Mass.App.Ct. 484 (1984), the Appeals Court dismissed a similar assertion by a racetrack, stating that ”[a]lthough the statutory grant of jurisdiction could have been made more explicit, we reject the racetrack’s contention that the commission had no jurisdiction of this situation [in which a racetrack excluded a licensed trainer].” Id. at 490. Accordingly, the court concludes that the Commission had jurisdiction to review Foxboro’s decision in the present case.

Foxboro further contends that the Commission erred in placing the burden of proof on Foxboro to demonstrate that it did not act arbitrarily or capriciously. Foxboro appears to rely on Jacobson v. Monmouth Park Jockey Club, 33 N.Y.2d 144 (1973), which held that a licensee complaining of a racetrack’s action in excluding the licensee from participation in races has a “heavy burden to prove that [exclusion]” . . . “was not a reasonable discretionary business judgment but was actuated by motives other than those relating to the best interests of racing generally.” Id. at 148-50. Massachusetts has not adopted the reasoning of Jacobson. Further, because the Commission’s factual findings rejected the proffered basis for Foxboro’s decision and embraced the uncontroverted evidence that Foxboro accepted Beauregard’s entries on April 26 and rejected them on April 28, the Commission’s decision did not turn on the allocation of the burden of proof. Thus, any error on the part of the Commission was harmless.