RALPH ARONE, Respondent, v SULLIVAN COUNTY HARNESS RACING ASSOCIATION, INC., Appellant. (And Two Other Actions.)

Third Department, December 9, 1982

APPEARANCES OF COUNSEL

*Friedlander, Gaines, Cohen, Rosenthal & Rosenberg* (*Joseph S. Rosenthal* and *Thomas J. McNamara* of counsel), for appellants.

*Newberg Law Offices* (*Marvin Newberg* of counsel), for respondents.

OPINION OF THE COURT

YESAWICH, JR., J.

These three appeals bring up for review a common legal issue. Plaintiffs are harness racing trainers, drivers, and owners licensed by the New York State Racing and Wagering Board. Defendant, Sullivan County Harness Racing

Association, Inc., the private for-profit corporate owner of the Monticello Raceway, summarily barred plaintiffs from working and racing at its facility. Two of the plaintiffs were allegedly excluded in retaliation for labor activities at, or litigation with, the raceway; the third was barred because his presence was deemed to be detrimental to the best interests of racing.

Their requests for preliminary injunctions enjoining defendant from denying them the right to train or race horses at defendant's racetrack were granted on the premise that defendant's conduct constituted "State action" which could not be undertaken without affording plaintiffs the procedural safeguards guaranteed by the Fourteenth Amendment. Support for this proposition was mistakenly found in *Jacobson v New York Racing Assn.* (33 NY2d 144). Since we believe that neither the principle enunciated in *Jacobson* nor the State action rationale applies, we reverse.

*Jacobson* declared that the New York Racing Association (NYRA) lacked the capacity to arbitrarily deny a licensed owner and trainer stall space at its racetrack and sanctioned a limited right of action aimed at preventing such uncontrolled activity by the NYRA. That cause of action sprung from the "virtual monopoly" which the NYRA possesses over thoroughbred racing.

Because defendant's characteristics are markedly different from the NYRA, a suit based upon *Jacobson's* reasoning is unavailable. It is of heightened significance that defendant does not monopolize harness racing in the State. Monticello Raceway is but one of seven privately operated harness tracks in New York, and it is not claimed that plaintiffs have been denied the opportunity to ply their trade at the other tracks. Moreover, defendant is a private for-profit corporation owned by over 2,000 shareholders which operates on a one-year renewable license, and upon its dissolution its assets pass to the shareholders. By contrast, the NYRA is a nonprofit association with a 25-year franchise to conduct virtually all the thoroughbred racing in the State, and on its dissolution its assets are to be transferred to exempt organizations designated by the Governor. In our view, the requisite showing of "economic necessity" or "monopoly power" necessary to fuel a *Jacob-*

*son*-type action has not been made; hence, defendant had available to it the long-recognized prerogative of racetrack operators to exclude anyone from its track, without cause, provided the exclusion is not based on race, creed, color or national origin (*People v Licata,* 28 NY2d 113; *Madden v Queens County Jockey Club,* 296 NY 249). By issuing regulations reiterating the proprietor's power to serve whom it pleases, the State Racing and Wagering Board has emphasized that the ability of private racetracks to bar unwanted persons continues intact despite extensive State control of harness racing (see 9 NYCRR 4119.8).

Equally unconvincing is the contention that exclusion of plaintiffs from the Monticello track infringes upon the State's power to license horsemen. As noted, evidence of pervasive exclusion from all New York harness tracks is lacking here; plaintiffs are at liberty to utilize their licenses to race at the other harness tracks.

An even more formidable argument exists for repudiating plaintiffs' "State action" claim. "State action" cannot be imputed to the endeavors of private individuals or corporations unless the State is responsible for the *specific* conduct which forms the basis of the complaint (*Blum v Yaretsky,* __ US __, __, 102 S Ct 2777, 2786 [June 25, 1982]). Here, there is simply no evidence that the decision to prohibit plaintiffs' access to the raceway's facilities was the product of either overt or covert significant encouragement by the State.

Harness racing concededly is the subject of far-reaching State supervision. The very nature of the industry lends itself to broader oversight than that required of most private corporate enterprises. There is, however, nothing inherent in horse racing which makes running a racetrack the performance of a public function (see *Madden v Queens County Jockey Club, supra,* p 254) or the exclusive preserve of the State (*Jackson v Metropolitan Edison Co.,* 419 US 345, 353). The State statutes and regulations to which defendant is subject (see, e.g., L 1980, ch 887, § 2, as amdg L 1940, ch 254, § 45, subd 1, par [b], cl [iv]) consist of no more than "mere regulation" which in itself is insufficient to sustain a finding of State action (see *Jackson v Metropol-*

*itan Edison Co., supra,* p 350; *Fulton v Hecht,* 545 F2d 540, 542).

The orders should be reversed, on the law and the facts, without costs, and the motions for preliminary injunctions denied.

CASEY, J. (dissenting). The majority's reliance upon defendant's lack of a monopoly over harness racing in this State as the decisive factor in determining whether plaintiffs have causes of action under the principle first advanced in *Jacobson v New York Racing Assn.* (33 NY2d 144) is misplaced. Indeed, the court in *Jacobson,* while describing NYRA as having a "virtual monopoly over thoroughbred racing in the State of New York", recognized that there existed in this State one thoroughbred track not owned by defendant NYRA at which plaintiff Jacobson could continue to ply his trade (*Jacobson v New York Racing Assn., supra,* p 149). Whether plaintiffs herein have a cause of action should not depend simply on the number of other facilities not owned by defendant; nor is the fact that defendant is a private for-profit corporation relevant. Rather, as the court did in *Jacobson,* we must focus on the impact that defendant's action has on plaintiffs' exercise of the privileges granted by their licenses and on their ability to earn a livelihood at their duly licensed trade.

The number and geographical location of harness tracks throughout the State is restricted by law (L 1940, ch 254, §§ 39, 40, as amd). Plaintiffs' licenses, duly issued by the New York State Racing and Wagering Board, authorize them to own, train and/or drive harness horses at any of these tracks. Accordingly, defendant's action in summarily barring plaintiffs from its facility plainly infringes on their licenses to some degree since it precludes them from competing at one of a limited number of facilities, and the only facility in their immediate vicinity.[1] Defendant's action not only has a direct impact on plaintiffs' ability to ply their duly licensed trade by barring them from the local facility where they have allegedly competed for years, it also has

---

1. Since plaintiffs have not alleged that their exclusion is based on a breach of rules and regulations promulgated by the State Racing and Wagering Board, defendant's actions do not infringe on the State's power to license to such an extent that defendant is absolutely prohibited from acting (see *Saumell v New York Racing Assn.,* 86 AD2d 604).

an indirect impact since it affects their reputations in the trade, thereby jeopardizing their chances of competing successfully at another facility. Moreover, we see no rational basis for giving the owners, jockeys and trainers of thoroughbred horses a cause of action, while denying the same cause of action to the owners, drivers and trainers of harness horses. Both sports are heavily regulated by the State, and the number of facilities in this State for each sport is severely restricted. From plaintiffs' point of view, the impact of defendant's action is virtually the same regardless of whether the number of other facilities is one or seven. Having concluded that defendant is bound by the principle set forth in *Jacobson (supra)*, we find that plaintiffs have asserted cognizable causes of action as discussed below.

In *Jacobson (supra)*, the court dealt only with the plaintiff's right to maintain an action for damages, since that is what the plaintiff therein sought. Here, however, plaintiffs seek not only monetary relief, but also injunctive relief. The preliminary injunction sought by plaintiffs herein[2] may properly issue only where plaintiffs demonstrate "(1) likelihood of [their] ultimate success on the merits; (2) irreparable injury to [them] absent granting of the preliminary injunction; and (3) a balancing of equities" (*Albini v Solork Assoc.,* 37 AD2d 835).

Turning to the first requirement — likelihood of success on the merits, plaintiffs' affidavits allege that they were excluded from the raceway by defendant for specific reasons recited by plaintiffs which are unrelated to the best interests of racing generally, or that defendant refused to give any reason for its actions. If these allegations are true, plaintiffs have carried their "heavy burden to prove that the [exclusion] was not a reasonable discretionary business judgment, but was activated by motives other than those relating to the best interests of racing generally" (*Jacobson v New York Racing Assn., supra,* p 150). Defendant's

---

2. Defendant's contention that plaintiffs are not entitled to a preliminary injunction since they did not serve complaints is meritless. The action was properly commenced by service of the summons with notice, and the notices of motion and affidavits are sufficient to establish the right to a preliminary injunction (*Fairfield Presidential Assoc. v Pollins,* 85 AD2d 653).

responding affidavits contain no factual allegations contradicting plaintiffs' allegations. Rather, defendant has merely asserted that in each instance it was exercising reasonable discretionary business judgment motivated by the best interests of racing, but there are no factual allegations providing the basis for this bare legal conclusion. Thus, plaintiffs have made a prima facie showing of their right to relief. Having done so, they have met the requirement that they demonstrate a likelihood of success; the actual proving of their case must be left to the full hearing on the merits (*Tucker v Toia,* 54 AD2d 322, 326).

As to the second requirement — irreparable injury, it is the general rule that injunctive relief is available only when resort to ordinary remedies would not afford adequate relief (see *Gaynor v Rockefeller,* 15 NY2d 120). Although plaintiffs may be entitled to money damages (*Jacobson v New York Racing Assn., supra*), such relief is inadequate. Plaintiffs' income is not generated from a regular, predictable source such that the damages sustained as a result of their exclusion can be readily ascertained. Rather, their income depends largely upon the results of the races in which their horses compete and upon the size of the purses involved. To say that predicting such results requires a great deal of speculation is to state the obvious. Accordingly, it is unlikely that plaintiffs could ever prove their actual damages, and thus damages do not afford the plain, adequate and complete remedy that would preclude plaintiffs from seeking injunctive relief (compare *Cut Corners Corp. v Barterama Corp.,* 83 AD2d 948, with *Stanklus v County of Montgomery,* 86 AD2d 908). Moreover, as noted above, the exclusion from defendant's raceway affects plaintiffs' reputations in the trade and may infringe to some extent on the State's licensing power. For these reasons, we conclude that plaintiffs have met their burden of showing irreparable harm.

As to the balancing of the equities, we perceive little harm to defendant from the granting of a preliminary injunction, which will maintain the *status quo,* in comparison with the substantial harm to plaintiffs if such relief is denied. If defendant has in fact acted in the best interests

of racing, its proof to that effect can be presented at the full hearing on the merits which should proceed without delay.

Since we have concluded that plaintiffs have asserted a common-law cause of action in accordance with the legal principle articulated in *Jacobson v New York Racing Assn.* (*supra*), and that plaintiffs have made the requisite showing for a preliminary injunction under that principle, we need not reach the question of whether defendant's conduct amounted to State action such that plaintiffs are entitled to injunctive relief under the due process clause of the Federal or State Constitutions. The orders appealed from should be modified accordingly. Finally, defendant correctly argues that an undertaking should have been required in connection with the grant of the preliminary injunction (CPLR 6312, subd [b]). The absence thereof, however, only renders the injunctions voidable; defendant should have applied for undertakings to Special Term or moved there to vacate the injunctions (*Duane Sales v Hayes*; 87 AD2d 730).

The orders of Special Term should be modified as indicated herein.

SWEENEY and KANE, JJ., concur with YESAWICH, JR., J.; MAHONEY, P. J., and CASEY, J., dissent and vote to modify in an opinion by CASEY, J.

Orders reversed, on the law and the facts, without costs, and motions for preliminary injunctions denied.