**Rejean DAIGNEAULT, Plaintiff,**

v.

**YONKERS RACING CORPORATION, Defendant.**

**No. 89 Civ. 6725 (GLG).**

United States District Court, S.D. New York.

Nov. 3, 1989.

Butler, Fitzgerald & Potter, New York City (Thomas A. Butler, of counsel), for plaintiff.

Bleakley Platt & Schmidt, White Plains, N.Y. (Frederick J. Martin, William P. Harrington, of counsel), for defendant.

MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiff alleges that defendant has prevented him from driving and training horses at Yonkers Raceway ("Yonkers") in violation of his constitutional rights and, consequently, in contravention of 42 U.S.C.

---

§ 1983 (1982). In addition, plaintiff claims that defendant has violated 15 U.S.C. §§ 1, 15 (1988) by conspiring with other harness tracks to prevent plaintiff from driving or training at these facilities as well. Plaintiff seeks injunctive relief, as well as both compensatory and punitive damages. Currently before this court is plaintiff's application for a preliminary injunction, in which plaintiff seeks to enjoin defendant from interfering with his right to drive and train horses at Yonkers pending the trial of this action.[1]

## I. FACTS

Plaintiff is a driver, trainer, and owner of standardbred horses. Defendant, a privately held corporation, operates Yonkers Raceway in Yonkers, New York. Yonkers is a harness racetrack recognized as the elite harness track in New York State, both in terms of the quality of its drivers and horses and the amount of purse money available to its participants. Plaintiff has worked at the various harness racetracks in New York, as well as at Meadowlands in New Jersey, but the majority of his training and driving during the past fourteen years has been at Yonkers.

In late September of this year, plaintiff was informed by Steven Starr, Yonkers' racing secretary, that he could no longer drive or train horses at Yonkers.[2] Starr, Robert Galterio, defendant's general manager, and Timothy Rooney, defendant's president, had met approximately one day previously during their quarterly review of the drivers and trainers working at Yonkers. The three, the so-called "Stall Committee," determined at that meeting that denying privileges to plaintiff was in the best interests of defendant and of harness racing generally. This decision was based in large measure, but apparently not entirely, upon the results of the fourth race held at Yonkers on September 23, 1989, wherein, it is alleged, plaintiff did not use his best efforts.

Following his conversation with Starr, plaintiff requested a meeting to discuss defendant's decision. A meeting was scheduled for October 6, 1989 at Galterio's office. Plaintiff showed up for the meeting but left before it ever began, claiming he was ill. Although the parties apparently wanted to reschedule the meeting, neither one made an effort to do so. This action was instituted shortly thereafter.[3]

## II. DISCUSSION

■ The standard for granting a preliminary injunction in this Circuit is well established. Plaintiff must show:

> irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir.1979). Resolving each prong of this formula would necessarily require a determination of whether Yonkers' actions constitute state action for purposes of the Constitution and 42 U.S.C. § 1983 (1982). As we did once before, and as a number of judges in this district have previously done, we resolve the instant application without resolving this truly vexatious question. We recognize, of course, that we may ultimately be forced to reveal our hand on this issue.[4]

---

1. Plaintiff's prior application for a temporary restraining order was denied on October 17, 1989.

2. Defendant suggests that plaintiff was only denied the right to drive horses and that plaintiff never actually applied for a renewal of his training privileges. In either respect, plaintiff has been unable to train horses at Yonkers and, therefore, we treat plaintiff's motion as a request for reinstatement of both his driving and training privileges.

3. The foregoing discussion represents an obviously simplified version of the facts in this case as they were developed at an evidentiary hearing held in conjunction with plaintiff's instant application.

4. Plaintiff has also alleged antitrust violations by defendant. Although there was some suggestion at the evidentiary hearing that a ban from Yonkers may ultimately result in an exclusion from all other harness tracks in the area, plaintiff has not produced sufficient evidence to merit the granting of injunctive relief on this

**64**

Our decision rests upon the contractual obligations established between the parties some twelve years ago. As it turns out, plaintiff previously was excluded from Yonkers in 1976 and brought suit before this court. The action was settled, culminating in an Order Upon Stipulation of Settlement and Discontinuance (the "Stipulation"), which provided in pertinent part:

4. The defendants will treat Daigneault alike with all other drivers/trainers in the event of future discipline or suspension and will likewise grant him a pre-suspension or prompt post-suspension hearing.

We believe that this clause controls, at least preliminarily, the obligations of the parties in the instant dispute and that plaintiff is now entitled to a hearing.

The language of the Stipulation clearly and unambiguously grants plaintiff the right to a pre-suspension or prompt post-suspension hearing. Nonetheless, defendant suggests that the Stipulation only entitles plaintiff to the same type of hearing, or lack thereof, as that given to all other drivers and trainers. This hearing, defendant claims, would have been held had plaintiff remained at Galterio's office on October 6. At such a hearing, plaintiff would have been advised of the reasons for defendant's decision and could have discussed them with Galterio. This strained interpretation ignores the use of the word "and," which shows that the provision is clearly written in the conjunctive. Reading the language as defendant suggests ignores the plain language of the Stipulation and would, in fact, make the second clause of this provision superfluous.

■ We also note the context in which the Stipulation was entered. While the parol evidence rule prohibits the admission of extrinsic evidence to vary or contradict the terms of a contract, such evidence, as defendant clearly recognizes (Def.Supp. Memo. at 18, footnote), is admissible to help explain or interpret a contract. *Garza v. Marine Transp. Lines*, 861 F.2d 23, 27

(2d Cir.1988). In this respect, Joseph Feraldo, president of the Standardbred Owners' Association, testified at the hearing. Feraldo was plaintiff's attorney in the 1976 suit and assisted in developing the Stipulation at issue. He testified that part of the reason for settling the action and foregoing the damage claim was that plaintiff would be granted the right to a hearing that differed from the traditional post-suspension meeting advocated by defendant. This was the benefit of the bargain obtained by plaintiff. Moreover, we recognize that if plaintiff was merely being granted the same treatment he would have received without the Stipulation, there would have been little incentive for him to settle the action.

Defendant also suggests that the informal hearing procedure it advocates is consistent with that created in the collective bargaining agreement between the Standardbred Owners' Association and Yonkers. While we recognize that plaintiff's rights might ordinarily be governed by the agreement since he is a member of the Association, we find that the rights encumbered within the Stipulation exist over and above those articulated in the agreement. Principally, we rely on the fact that the agreement was not adopted until two or three years after the Stipulation was entered into. Therefore, the rights granted in the agreement cannot be read to limit the rights plaintiff gained through the Stipulation.

Finally, defendant argues that it complied with the Stipulation in any event by offering an opportunity for plaintiff to meet with Galterio on October 6. We admit that in an ideal world plaintiff would have met with Galterio so that we could precisely determine what defendant considers to be a hearing. As noted, however, defendant argues that such a hearing would have provided plaintiff with an opportunity to be advised of and to discuss the charges against him.

ground. Plaintiff's witnesses' conclusory allegations are not sufficient to establish probable success on the merits or even serious questions

going to the merits. Moreover, plaintiff has not specifically named any harness track as a co-conspirator.

We recognize that the Stipulation does not provide for the type of hearing to be held. Nonetheless, taking notice of both the plain meaning of the word hearing and the testimony by Feraldo, we do not believe that a cursory meeting before the same person who had previously decided to deny plaintiff his privileges can constitute the type of hearing provided for in the Stipulation. While such a meeting may comply with the Standardbred Owners' Agreement and may comport with the rights afforded other drivers and trainers, plaintiff gained additional rights by virtue of the Stipulation. Therefore, we order defendant to conduct a hearing promptly, prior to which plaintiff is to be given notice of the charges against him. Plaintiff may be represented by counsel at the hearing. Moreover, plaintiff is entitled to present evidence and to call witnesses on his behalf, subject to their being cross-examined by defendant. Finally, the hearing is to be held before an impartial hearing officer selected by defendant. By impartial we mean that the hearing officer cannot be part of Yonkers' management. However, plaintiff shall have no right to approve the officer selected by defendant.

The foregoing constitutes the decision of this court. Since we have determined that the Stipulation governs the rights of the parties and that a prompt hearing is necessary, plaintiff's application for a preliminary injunction is denied pending completion of this hearing. We recognize that plaintiff may ultimately return before this court and make the same motion, but for the time being we deny plaintiff's application. We reiterate that such a hearing must be held promptly and note that defendant already may have breached the Stipulation by not previously providing an opportunity for a prompt hearing. That issue, however, remains a question for another day. We do grant to plaintiff, however, the limited right to train at Yonkers the three horses that he owns pending the outcome of the hearing.

SO ORDERED.