**George HADGES, Plaintiff,**

v.

**YONKERS RACING CORPORATION, Defendant.**

No. 89 Civ. 8055 (GLG).

United States District Court, S.D. New York.

March 19, 1990.

Bleakley Platt & Schmidt, White Plains, N.Y. (Frederick J. Martin and William P. Harrington, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

George Hadges, a driver, trainer, and owner of standardbred horses,[1] has sued Yonkers Racing Corporation ("YRC"), the owner and operator of Yonkers Raceway ("Yonkers") in Yonkers, New York, under 42 U.S.C. § 1983 (1982) for alleged violations of his Fourteenth Amendment due process rights. Specifically, he contends that YRC's refusal to allow him to utilize his state-issued licenses at Yonkers without affording him sufficient procedural protections was a violation of his rights. Plaintiff now moves for a preliminary injunction and YRC cross-moves to dismiss or, in the alternative, for summary judgment.

## I. FACTS

Plaintiff is licensed as a driver, trainer, and owner in numerous states, including Delaware, Florida, Maryland, New Jersey, Ohio, and Pennsylvania. His primary work, however, has been in New York, where he is also licensed. New York law, like that of most states, requires such licensing before one can work at any of the tracks in the state. N.Y.Comp.Codes R. & Regs. tit. 9, § 4101.24(b) (1985) (promulgated pursuant to N.Y. Rac. Pari–Mut. Wag. & Breed. Law § 309 (McKinney 1984 & Supp.1990)). Within New York, plaintiff has worked most of the state's harness tracks,[2] but has worked most frequently at Yonkers. He has worked at Yonkers in one capacity or another since 1972, with two significant interruptions.

Goodkind, Labaton & Rudoff, New York City (Mark S. Arisohn, of counsel), for plaintiff.

First, plaintiff's New York license was suspended by the New York State Racing and Wagering Board ("NYSWRB")[3] from

---

**1.** Standardbred horses are raced at harness tracks where the driver rides behind the horse in a sulky. This is to be distinguished from thoroughbred horses that race with riders on their backs.

**2.** Besides Yonkers Raceway, the other principal New York harness tracks are Batavia Downs, Buffalo Raceway, Monticello Raceway, Saratoga Raceway, and Vernon Downs. Apparently, there are also harness tracks in Goshen and

Syracuse that operate on a limited basis. Another track, Roosevelt Raceway, was located on Long Island but closed in 1988. Plaintiff had also raced there and, in fact, some of his present difficulties stem from events occurring at Roosevelt.

**3.** The New York State Racing and Wagering Board has jurisdiction over all horse racing activities in New York. N.Y. Rac. Pari–Mut. Wag. & Breed. Law § 101 (McKinney 1984). Includ-

1974 to 1976 because of certain omissions on his initial application for a license. Specifically, he had neglected to report four criminal arrests on his application. Plaintiff could not compete at any of the harness tracks in New York during the period of suspension. More germane to the present action, however, is plaintiff's recent suspension by the NYSRWB. Plaintiff's license was suspended from January 5, 1989 to July 5, 1989 due to events occurring at Roosevelt Raceway on October 9, 1986. The NYSRWB determined that plaintiff had illegally signaled a patron of the racetrack to bet on a horse other than the one plaintiff was riding. Thereafter, the NYSRWB reinstated plaintiff's license effective July 5, 1989. Plaintiff's request for reinstatement of his privileges at Yonkers, however, was denied by YRC. Moreover, in the Fall of 1989 YRC further excluded plaintiff from even entering the grounds at Yonkers as a patron.[4]

YRC contends that it banned plaintiff pursuant to its common law rights, which the NYSRWB has expressly protected, to exclude anyone "without reason, provided such exclusion is not based upon race, creed, color or national origin." N.Y. Comp.Codes R. & Regs. tit. 9, § 4119.8

(1985). Notwithstanding the NYSRWB's ability to suspend or revoke licenses, YRC claims that as a private racetrack owner, it retains the ability to exclude participants and patrons. More specifically, YRC states that it banned plaintiff because of his past racing performances and his involvement in litigation over the ownership of horses. Galterio Aff. at 3. Additionally, YRC points out that plaintiff's record as a driver and trainer was marginal, at best, and that it is continually seeking to offer the highest quality competition to its patrons.[5]

In December 1989, not having been able to convince YRC to reinstate his privileges, plaintiff instituted this action and moved for a preliminary injunction.[6] YRC, in turn, cross-moved to dismiss or, alternatively, for summary judgment. Since we find one issue to be dispositive of both motions, we will consider them simultaneously.

## II. DISCUSSION

■ The standard for granting a motion for a preliminary injunction is well established. The plaintiff must show:

irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to

---

ed within the NYSRWB's powers are the abilities to issue, suspend, or revoke licenses. *Id.* § 309 (McKinney 1984 & Supp.1990).

4. The timing of this subsequent ban as a patron is hotly disputed. Plaintiff contends it occurred on November 17, 1989 while Yonkers claims the ban became effective in October 1989. We find no need to resolve this dispute. We do recognize, however, that part of plaintiff's grievance is that he was banned from Yonkers because of testimony he gave before this court on November 1, 1989 on behalf of another driver in an unrelated matter. Obviously, this argument is specious with respect to his being banned as an owner, driver, and trainer since plaintiff himself admits that he was banned for these purposes sometime prior to November 1. As to his being banned as a patron, however, this argument is not specious if plaintiff actually was banned on November 17. Nonetheless, it is extremely doubtful that plaintiff has any cognizable rights in being a patron at Yonkers. *See Ziskis v. Kowalski,* 726 F.Supp. 902, 904 (D.Conn.1989). More importantly, our finding that YRC's action was not state action, *see infra,* renders this entire issue moot.

5. The exact chain of events that transpired with respect to the ban is disputed. It is unclear whether plaintiff was ever offered any explanation for the ban or if he was allowed to rebut YRC's contentions. Ordinarily, we would have to resolve this issue in order to determine whether plaintiff was afforded appropriate due process protections. However, since we find no state action, *see infra,* we need not resolve this issue.

6. Plaintiff had previously brought an action on March 24, 1989 pursuant to 42 U.S.C. § 1983 against Richard Corbisiero, chairman of the NYSRWB, claiming that his 1989 license suspension violated his due process rights and was based on a regulation that was unconstitutionally vague. This action is presently pending before us, although we note that plaintiff's motion for a preliminary injunction was denied. *Hadges v. Corbisiero,* No. 89 Civ. 2012, slip op. (S.D.N.Y. Apr. 20, 1989), *reargument denied,* No. 89 Civ. 2012, slip op. (S.D.N.Y. May 16, 1989). Plaintiff contends that his filing of this action against Corbisiero was one of the factors behind YRC's decision to exclude him from Yonkers.

make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir.1979). Thus, even if we assume irreparable harm and a balance of hardships in plaintiff's favor, plaintiff must at least show the existence of "sufficiently serious questions going to the merits." The standard governing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is equally well settled. Such a motion can only be granted if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). However, rule 12(b) further states that if in resolving a motion under rule 12(b)(6) the court considers matters outside the pleading, the motion shall be treated as one for summary judgment. In this case, we have considered affidavits submitted by both parties and, therefore, treat YRC's motion as one for summary judgment under rule 56. Rule 56 states that summary judgment shall be granted if the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). If the moving party satisfies this burden, the party opposing the motion "must set forth specific facts showing that there is a genuine need for trial," Fed.R.Civ.P. 56(e), and there must be more than merely "some metaphysical doubt as to [these] material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). While motions for a preliminary injunction and for summary judgment obviously rest on different grounds, it stands to reason that if we conclude that YRC's summary judgment motion can be granted because there are no genuine issues of material fact and

it is entitled to judgment as a matter of law, *a fortiori*, there are no serious questions going to the merits and plaintiff's motion for a preliminary injunction must be denied.

Plaintiff has sued under 42 U.S.C. § 1983, which provides a remedy for deprivations of rights secured by the Constitution when such deprivation takes place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory...." 42 U.S.C. § 1983 (1982). Plaintiff claims that his Fourteenth Amendment right to freedom from deprivations of "life, liberty, or property, without due process of law" has been violated. Specifically, the Fourteenth Amendment is limited to deprivations caused by the "state" and without this so-called "state action," there is no Fourteenth Amendment violation. Since section 1983 was meant to provide a remedy for Constitutional violations, a finding of "state action" for Fourteenth Amendment purposes also satisfies the "under color of" requirement of section 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 934–35, 102 S.Ct. 2744, 2752, 73 L.Ed.2d 482 (1982).[7] Therefore, for there to be a genuine issue of material fact and, in turn, a serious question going to the merits, we must conclude that YRC's actions can be considered state actions.

YRC moves for summary judgment claiming there is no issue of material fact on the question of state action. YRC argues that it is a private, closely held corporation operating for the profits of its shareholders. Moreover, it contends that since acquiring the track in 1970, the Rooney family, who are the corporation's shareholders, have invested $65,000,000.00 in the track. YRC also claims that while it is heavily regulated and operates the track pursuant to a license granted by the state, these factors do not transpose its private decisions into state action, especially since

---

7. The *Lugar* Court recognized that the requirements of state action under the Fourteenth Amendment and action "under color of any statute ... of any State" under section 1983 may not be identical. Nonetheless, the Court stated that "[i]f the challenged conduct of respondents

constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under § 1983." *Lugar*, 457 U.S. at 935, 102 S.Ct. at 2752; *see Annunziato v. The Gan, Inc.*, 744 F.2d 244, 249–50 (2d Cir.1984).

the NYSRWB has reserved YRC's common law right to exclude anyone from the track except if based on race, creed, color, or national origin. N.Y.Comp.Codes R. & Regs. tit. 9, § 4119.8 (1985); *see Saumell v. New York Racing Ass'n,* 58 N.Y.2d 231, 238, 460 N.Y.S.2d 763, 766–67, 447 N.E.2d 706, 708 (1983); *Jacobson v. New York Racing Ass'n,* 33 N.Y.2d 144, 149, 350 N.Y. S.2d 639, 642, 305 N.E.2d 765, 767–68 (1973). Finally, YRC offers an affidavit from the general manager at Yonkers stating that no state officials were involved in the decision to deny privileges to plaintiff.

Plaintiff counters these arguments by stating that racing at Yonkers is highly regulated by the state and that the state receives substantial revenues from the tracks. Moreover, plaintiff suggests that the state has afforded YRC a monopoly in the metropolitan New York City region, especially now that Roosevelt Raceway on Long Island has closed. Plaintiff contends that the other tracks in the state are not viable alternatives because of their location and their small purses and, therefore, that a denial of privileges at Yonkers is a de facto revocation of his license. With these arguments before us, we can now address this issue. We note that we are apparently the first federal court in this state to squarely address this truly vexatious question.[8]

The Supreme Court has announced two different tests for determining whether state action exists. Specifically, there must be a showing that:

"there is a sufficiently close nexus between the [government] and the challenged action of the regulated entity so

that the action of the latter may be fairly treated as that of the [government] itself," *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972)), or that even if the particular act is not directly attributable to the government, the government "so far insinuated itself into a position of interdependence with [the entity] that it was a joint participant in the enterprise." *Jackson,* 419 U.S. at 357–58, 95 S.Ct. at 457 (citing *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 725, 81 S.Ct. 856, 861–62, 6 L.Ed.2d 45 (1961)).

*Myron v. Consolidated Rail Corp.,* 752 F.2d 50, 54 (2d Cir.1985). While these tests provide some guidance on resolving this question, the Court itself has recognized that any resolution of the issue requires a fact specific inquiry. *Lugar,* 457 U.S. at 939, 102 S.Ct. at 2754–55. The bottom line is that there must be a showing that the activities of the ostensibly private entity are fairly attributable to the state. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982). In the case at bar, it is unclear which of these two tests plaintiff is relying on. Nonetheless, we find that under either test, plaintiff has not shown the existence of state action.

## A. Close Nexus

■ The principal case credited with establishing the "close nexus" test is *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In

---

**8.** We, like Judges Pierce, Sweet, and Weinfeld before us, have been able to resolve cases presenting analogous factual situations without deciding this question of state action. *See Daigneault v. Yonkers Racing Corp.,* 735 F.Supp. 62, 63 (S.D.N.Y.1989) (Goettel, J.) (not necessary to resolve issue); *Rahner v. Yonkers Racing Corp.,* No. 78 Civ. 3967, transcript at 33 (S.D.N.Y. Sept. 11, 1978) (Pierce, J.) (assuming state action); *Rahner v. Yonkers Racing Corp.,* No. 78 Civ. 3967, slip op. at 1 (S.D.N.Y. Aug. 24, 1978) (Sweet, J.) (assuming state action); *Daigneault v. Yonkers Racing Corp.,* No. 76 Civ. 3999, slip op. at 6 (S.D.N.Y. Oct. 13, 1976) (Goettel, J.) (not neces-

sary to resolve issue); *Gilmour v. New York State Racing & Wagering Bd.,* 405 F.Supp. 458, 460 (S.D.N.Y.1975) (Weinfeld, J.) (assuming state action). The New York Court of Appeals has never decided this question either and the only appellate decision in New York was rendered by the Appellate Division, Third Department, in *Arone v. Sullivan County Harness Racing Ass'n,* 90 A.D.2d 137, 457 N.Y.S.2d 958 (3d Dep't 1982). The *Arone* court concluded that there was no state action based on the facts it was presented with. *Id.,* 457 N.Y.S.2d at 959. This case will be discussed further in a subsequent section of this opinion.

*Jackson,* plaintiff's electricity service was terminated by Metropolitan Edison, a privately owned utility, because of non-payment of bills. Plaintiff brought suit under section 1983 claiming she was entitled to notice and a hearing before her services could be terminated. Plaintiff claimed that the pervasive regulation of the utility, the virtual monopoly granted to the utility by the state in the relevant geographic area, and the essential nature of the service being provided created state action. Moreover, plaintiff contended that since the utility's tariff, which was filed with the state, permitted the utility to cancel a customer's account upon non-payment, state action existed when such a termination was effectuated. Notwithstanding these arguments, the Court found these factors insufficient to establish a "close nexus" between the utility and the state such that "the action of the [utility] may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453. The utility was privately owned and, irrespective of heavy regulation and a state-granted virtual monopoly, there was no state action.

We are persuaded by the analysis of the *Jackson* Court although we certainly recognize that the plaintiff in *Jackson* did not possess a state-issued license as in the case before us. First, plaintiff contends that both Yonkers and YRC are heavily regulated by the state, even to a greater extent than that evident in *Jackson.* Admittedly, there exists pervasive regulation by the state of virtually every aspect of the harness racing business. In fact, without state approval, YRC could not operate a harness track in the state. N.Y. Rac. Pari.–Mut. Wag. & Breed. Law § 307 (1984); N.Y.Comp.Codes R. & Regs. tit. 9, § 4101.1 (1985). Nonetheless, the *Jackson* Court emphatically stated that regulation alone, even if "extensive and detailed," will

not satisfy the close nexus test. *Jackson,* 419 U.S. at 350, 95 S.Ct. at 453; *see also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 938, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982) (government regulation must be connected to the private entity's decision). Moreover, mere licensing by the state of YRC is not sufficient to establish state action. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 171–72, 92 S.Ct. 1965, 1970–71, 32 L.Ed.2d 627 (1972). Plaintiff further contends that the monopoly power granted to YRC in the metropolitan area, especially since Roosevelt Raceway has now closed, is further evidence of the requisite close nexus between the state and YRC's decision. Once again, however, the *Jackson* Court resolved this issue, stating that plaintiff must show a relationship between the defendant's actions and its monopoly status. *Jackson,* 419 U.S. at 352, 95 S.Ct. at 454. No such showing has been made since plaintiff can still work at any other track in New York.[9] There has been no suggestion that a ban from Yonkers amounts to a ban from the other tracks.[10]

The mere fact that the state allows YRC to continue to exercise its common law rights is not state action, absent some state involvement in YRC's denial of privileges to plaintiff. *See Jackson,* 419 U.S. at 357, 95 S.Ct. at 456–57. There was no exercise by YRC of a power "traditionally exclusively reserved to the State." *Id.* at 352, 95 S.Ct. at 454. Instead, the evidence presented shows that YRC's decision to exclude plaintiff was based on its own business judgment. *See Gilmour v. New York State Racing & Wagering Bd.,* 405 F.Supp. 458, 460 (S.D.N.Y.1975) ("The owners of the raceways, no less than the state and its official agency, ... have a great stake in maintaining and protecting the sport's integrity against those who would despoil it."). While we recognize that state offi-

---

**9.** We note that Meadowlands Raceway, located in New Jersey and within the metropolitan New York City region, remains an alternate track where plaintiff can work.

**10.** We admit that proof that other tracks in the state followed YRC's decision could establish state action since YRC's decision, in effect, would result in the de facto revocation of plain-

tiff's license. In fact, one of the principal reasons behind the conclusion that decisions by the New York Racing Association ("NYRA") are state action is the fact that NYRA, a not-for-profit association operating New York's thoroughbred tracks, can preclude parties from working at virtually all of New York's thoroughbred tracks. *See infra.*

cials are present at each race conducted at Yonkers and that these officials can conduct inquiries into the performances of drivers and trainers, there has been no suggestion that these state officials were involved in YRC's decision to exclude plaintiff.[11] Moreover, the fact that YRC's decision, may, at least in part, have been based on the same factual predicates that previously resulted in disciplinary actions by the state does not turn YRC's actions into state action. It would be unacceptable if any state action, like an arrest, could not be relied on by a private entity in making a decision to grant or deny certain privileges because such reliance would make the denial of privileges a state decision. The state must be "responsible" for the defendant's conduct and this did not occur. *See Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982).

Therefore, we find that plaintiff has not shown state action under the close nexus test.

### B. *Symbiotic Relationship*

■ The second test to be applied in determining the existence of state action is the so-called "symbiotic relationship" test. This test, announced in *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), provides that there will be state action if "[t]he State has so far insinuated itself into a position of interdependence with [the entity] that it must be recognized as a joint participant in the challenged activity." *Id.* at 725, 81 S.Ct. at 861–62. Unlike the close nexus test, the state need not be involved in the particular decision or action, but rather, the overall relationship between the state and the ostensibly private entity is reviewed. *Myron v. Consolidated Rail Corp.*, 752 F.2d 50, 54 (2d Cir.1985); *Stevens v. New York Racing Ass'n*, 665 F.Supp. 164, 171 (E.D.N.Y.1987). In *Burton*, a private restaurant located in a state-owned building refused to serve plaintiff, a black. The Court agreed there was state action since the restaurant was a lessee of the Wilmington Parking Authority, a state agency that owned the building. Moreover, the responsibility for the upkeep and maintenance of the building rested with the state. Finally, the Court was influenced by the apparent incongruity of a state-operated building being open to the entire public if used for parking, but limited to certain races when the same building, albeit a different part, is used for dining. *Burton*, 365 U.S. at 724–25, 81 S.Ct. at 861–62.

Plaintiff argues that application of the *Burton* analysis to the facts before us requires a similar finding of state action. Again, we disagree. In *Burton*, the restaurant was an actual lessee in a building owned by the state and paid for with public funds. The case at bar presents no such facts. Yonkers is a privately-owned facility, operated for the profit of YRC's shareholders. While we recognize the existence of a license agreement issued by the state to YRC, as well as substantial regulation by the state, this nowhere approximates the level of interdependence seen in *Burton* where the state actually owned the building. The *Jackson* Court, in fact, similarly refused to accept the *Burton* Court's analysis, concluding that the private owner, though heavily regulated, was not a joint venturer with the state. *Jackson*, 419 U.S. at 358, 95 S.Ct. at 457. Moreover, in the case before us there is no suggestion of the incongruity that troubled the Supreme Court in *Burton*. Finally, the fact that the state receives significant revenues from the track and that these revenues increase if the track is prosperous does not create a symbiotic relationship. *See Roberts v. Louisiana Downs, Inc.*, 742 F.2d 221, 225 (5th Cir.1984). It cannot be said that "the State in any realistic sense [is] a partner or even a joint venturer in [YRC's] enterprise." *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 176–77, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972); *see also Lemberos v. Laurel Racecourse, Inc.*, 489 F.Supp. 1376,

---

11. Admittedly, a situation can arise wherein the state officials instigate the private action by initiating an inquiry and then refusing to prosecute, leaving the private entity to complete the investigation unbridled by the strictures of the due process clause. There is no suggestion that such chicanery occurred in the case at bar.

1383 (D.Md.1980) (similarly distinguishing *Burton* because private funds used to acquire track and profits went to private shareholders).

Therefore, we conclude that there has been no showing of state action under the symbiotic relationship test either.

### C. *Other Authorities*

The New York Court of Appeals, as we have noted, has never ruled on this issue. The highest court in the state that has considered this question concluded that there was no state action. *Arone v. Sullivan County Harness Racing Ass'n*, 90 A.D.2d 137, 457 N.Y.S.2d 958, 959 (3d Dep't 1982). Although we are certainly not bound by this decision, we are persuaded by the court's analysis. In *Arone*, the plaintiffs were excluded from Monticello Raceway and claimed the exclusion was state action. The Appellate Division, Third Department, disagreed, relying on the fact that the defendant, as in the instant action, was a private corporation operating for the profits of its shareholders. Moreover, the court found that the association did not have monopoly power since plaintiffs could work at any of the state's other harness tracks. Notwithstanding heavy regulation of the industry, the court held, the NYSRWB allowed the track's proprietors to retain their common law power to exclude undesirable persons. Finally, the court noted, there were no state officials involved in the defendant's specific decision to exclude the plaintiffs. *Id.* 457 N.Y.S.2d at 959.

The *Arone* court rejected an argument, similar to one seemingly raised by plaintiff in the case at bar, that it should ignore distinctions between New York's harness and thoroughbred tracks. As noted, harness tracks are operated by private organizations with the approval of the NYSRWB. Moreover, the NYSRWB heavily regulates the activities at these tracks. On the other hand, the state's major thoroughbred tracks are owned and operated by the New York Racing Association ("NYRA"), a not-for-profit racing association, pursuant to a twenty-five year li-

cense issued by the NYSRWB. Any profits earned through such racing inure to the benefit of the state. Finally, NYRA has a virtual monopoly in New York's thoroughbred tracks since it operates three of the four tracks in New York and the one it does not operate, Finger Lakes Racetrack in Canadaigua, New York, offers substantially lesser purses than do the other tracks. Therefore, a licensed driver or trainer effectively can be barred from plying his trade in New York if NYRA decides not to grant him privileges. *See Jacobson v. New York Racing Ass'n*, 33 N.Y.2d 144, 149–50, 350 N.Y.S.2d 639, 642, 305 N.E.2d 765, 767–68 (1973). All these factors lead to the inexorable conclusion that a decision by NYRA is state action. *See Stevens v. New York Racing Ass'n*, 665 F.Supp. 164, 172 (E.D.N.Y.1987) (state action under symbiotic relationship test); *Saumell v. New York Racing Ass'n*, 58 N.Y.2d 231, 240, 460 N.Y.S.2d 763, 768, 447 N.E.2d 706, 710–11 (1983) (state action conceded by NYRA). *See generally Halpern v. Lomenzo*, 81 Misc.2d 467, 367 N.Y.S.2d 653, 656–60 (N.Y.Sup.Ct.1975) (discussion of NYRA). As the *Arone* court concluded, however, there are sufficient distinctions between NYRA's ownership and operation of thoroughbred tracks and a private corporation's ownership of a harness track. We agree that these distinctions constitute the difference between state action on the one hand, and private action on the other.

In finding an absence of state action, we are not persuaded by the cases plaintiff has cited in support of his argument. In *Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589 (3d Cir.1979), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980), one of the primary cases plaintiff relies on, a licensed harness driver and trainer was denied stall space by Mountain Laurel Racing, Inc., a private for-profit corporation that operated the Meadows Race Track in Pennsylvania. The decision was based upon a determination that the plaintiff had been driving inconsistently, a violation of state regulations. The court first held that there was no state action under the symbiotic relationship test. Although the defendant was highly regulated, much

like YRC, the court found this insufficient to make "the State a joint venturer with Mountain Laurel." *Id.* at 596. The court went on, however, to discuss the close nexus test, concluding that state action existed. Specifically, the court determined that while a private corporation does maintain its common law right to exclude undesirable persons, in this case the corporation only reached its decision to exclude plaintiff following a meeting with state officials who had witnessed the race in question and confirmed that plaintiff was driving inconsistently. State officials participated in the decision to exclude Fitzgerald, thereby putting the weight of the state behind the decision. *Id.* at 599.

As we have previously noted, determining the presence or absence of state action in a particular situation is a fact specific inquiry. We find the facts of *Fitzgerald* to be entirely distinguishable from those presented before us. In the case at bar, YRC, and YRC alone, made the decision to exclude plaintiff. Plaintiff has offered no evidence suggesting that anyone at YRC consulted the state racing officials before reaching its decision. Moreover, YRC, unlike the corporation in *Fitzgerald*, did not decide to exclude plaintiff by relying on a provision of state law that the NYSRWB is charged with enforcing. *Cf. Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1077 (5th Cir.1985) (similarly distinguishing *Fitzgerald*). Thus, we are not persuaded by *Fitzgerald.* Based on the facts presented before us, YRC's actions cannot be considered state action for purposes of the Fourteenth Amendment and section 1983. *See Bier v. Fleming*, 717 F.2d 308, 310–12 (6th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984).

## III. CONCLUSION

YRC has established that its denial of privileges to plaintiff was based strictly on its own business judgment with no state involvement. Moreover, YRC has also shown that no symbiotic relationship exists between YRC and the state. Therefore, plaintiff having failed to offer anything to rebut the conclusion that there was no state action involved in YRC's decision to deny privileges to plaintiff, we must grant summary judgment to the defendant. In turn, we deny plaintiff's motion for a preliminary injunction.

SO ORDERED.