**George HADGES, Plaintiff,**

v.

**Richard F. CORBISIERO, as Chairman of the New York State Racing & Wagering Board, Defendant.**

No. 89 Civ. 2012 (GLG).

United States District Court,
S.D. New York.

April 5, 1991.

Goodkind, Labaton & Rudoff, New York City by Mark Arisohn, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City by Caren S. Bruten, for defendant.

## MEMORANDUM DECISION

GOETTEL, District Judge.

### I. FACTS

Familiarity with our decisions of April 20, 1989 and May 16, 1989 is presumed.[1] Therefore, only a brief recitation of the facts is necessary.

On October 9, 1986 plaintiff drove the number two horse in the eighth race at Roosevelt Raceway. While warming up his horse, plaintiff was heard to yell, "Get the seven," to an unidentified patron. The patron was never caught and the seven horse won the race. Plaintiff was charged by the New York State Racing and Wagering Board (the "Board") with violating Board rule 4119.9(a), which prohibits "conduct detrimental to the best interests of racing." Prior to his hearing before a Board hearing officer, plaintiff filed an article 78 proceeding in state court that was eventually dismissed. The hearing was then held and on November 9, 1987 the Board adopted the hearing officer's recommendation that plaintiff's license be suspended for six months. Plaintiff appealed this ruling via a second article 78 proceeding, but in De-

cember 1988 the Board's determination was upheld. Plaintiff then began serving his suspension, but before its conclusion the instant action was filed.

Plaintiff's Supplemental Complaint alleges that his due process rights were violated, in contravention of 42 U.S.C. § 1983, due to Board policies permitting Board employees to serve as investigators, prosecutors, and hearing officers in administrative proceedings. Plaintiff does not suggest that any employee served in more than one capacity in a specific case, but rather, that the employees had different responsibilities in different cases. This policy allegedly created such a tremendous risk of unfairness that it deprived plaintiff of his due process rights. Plaintiff's second and third claims, which relate to an alleged failure of the Board to reinstate plaintiff's license following the conclusion of his suspension, have been voluntarily withdrawn. A claim that the statutory provision upon which the Board based its suspension was unconstitutionally vague has also been discontinued.

On April 20, 1989 and May 16, 1989, we denied plaintiff's motions for a preliminary injunction and for reargument, respectively. In May 1990, defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Since materials outside the pleadings were relied on, we converted the motion to one for summary judgment and afforded plaintiff an opportunity to conduct further discovery. That discovery having been completed, plaintiff now cross-moves for summary judgment.

The parties agree that there are no facts to be litigated.[2] In the case at issue, Richard Dailey was the hearing officer and David Vaughan prosecuted the case, although each has served in the other's ca-

---

1. Only the April 20 decision has been published. See 739 F.Supp. 792 (S.D.N.Y.1989). In addition, we note that plaintiff started a separate action under 42 U.S.C. § 1983 against Yonkers Racing Corp. because he was denied privileges at Yonkers Raceway after his license was reinstated. We dismissed that action, and the Second Circuit affirmed, for lack of state action. See 733 F.Supp. 686 (S.D.N.Y.), aff'd, 918 F.2d 1079 (2d Cir.1990).

2. A recent Executive Order signed by Governor Cuomo attempted to modify the hearing procedures utilized by state administrative agencies. See infra p. 392. The parties agree that this order has no bearing on the case at bar and that the only relevant inquiry is into the procedures employed by the Board at the time of plaintiff's suspension. Thus, any reference to Board procedures will only be to this relevant time period.

pacity in the past. However, Dailey has not prosecuted a case since 1984. Dailey and Vaughan each have been employed by the Board for over ten years and presently, as well as during the relevant time period, Vaughan is legal counsel to the Board while Dailey, also an attorney, is the Board's director of Racing and Off–Track Betting. On approximately ten occasions, Vaughan has prosecuted a case before Dailey, and on each occasion Dailey has found for the Board. Since there were no independent administrative judges employed by the Board to handle such hearings at the time, Vaughan was given the responsibility of recommending a hearing officer to Richard Corbisiero, the Board's chairman and the named defendant in this action. These hearing officers were Board employees and Vaughan's recommendation was based on the subject matter and complexity of the particular case. In complex racing-related matters, Vaughan usually recommended Dailey because of his vast experience in the field. Although the chairman made the actual appointment, Vaughan admits that the chairman invariably followed his recommendation. In addition, Vaughan himself assigned the prosecutor for individual proceedings and while he prosecuted the case at bar, at present he handles relatively few prosecutions.

Upon being informed that he had been selected as a hearing officer, Dailey generally contacted Vaughan to determine what the general subject matter of the case was and to inquire about procedural matters like scheduling. However, Dailey testified that he usually did not know much more than that it was "a license denial or ... a racing matter," Dailey Depo. Tr. at 89, and this was apparently true in the instant action. While the selection of the hearing officer and prosecutor is not made until a preliminary investigation has been completed, neither Vaughan nor Dailey has ever served as an investigator. Finally, we note that while the decision of a hearing officer is merely advisory until adopted by the Board, it is extremely rare that his recommendation is not followed.

These facts are not in dispute and the only issue before us is whether the legal conclusion to be drawn from them establishes a violation of plaintiff's due process rights.

## II. DISCUSSION

■ The legal arguments presented by the parties are not much different than those offered in conjunction with the preliminary injunction motion and the motion to reargue, although they have been clarified by virtue of discovery. It is clear that while the due process clause requires plaintiff to be afforded a fair and impartial hearing, *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975), this is not tantamount to a mandate that administrative agencies retain independent administrative law judges. The Supreme Court has specifically stated that there is "no support for the bald proposition ... that agency members who participate in an investigation are disqualified from adjudicating." *Withrow*, 421 U.S. at 52, 95 S.Ct. at 1467. The *Withrow* Court found the procedures utilized to be constitutional when the same board conducted both the investigative and disciplinary review in the same proceeding. Thus, the mere fact that Dailey and Vaughan have served in the other's capacity in the past does not render plaintiff's treatment unconstitutional since there was no overlap of responsibilities in individual proceedings. Moreover, *Wang Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616 (1950), another case plaintiff cites, is unavailing. In that case, the Court was presented with the question of whether deportation proceedings were governed by the Administrative Procedure Act and the Court's objections to the agency's actions were based on the fact that the presiding examiner was forced to act in both prosecutorial and adjudicative functions in the same case. *Id.* at 46, 70 S.Ct. at 452. Obviously, this did not occur in the case at bar.

■ Notwithstanding the foregoing, the Supreme Court has recognized that courts may consider "special facts or circumstances present in the case before it" to determine if "the risk of unfairness is into-

lerably high." *Withrow,* 421 U.S. at 58, 95 S.Ct. at 1470. Now that discovery has been completed, this is the focus of plaintiff's argument. Plaintiff contends that he did not receive a fair and impartial hearing because of Dailey's actual bias or, at a minimum, because of the risk that Dailey was predisposed to rule in the Board's favor in light of the Board's procedures. Specifically, plaintiff points to the fact that Vaughan actually selected Dailey as the hearing officer after selecting himself as prosecutor; that Dailey would contact Vaughan after being selected as a hearing officer and engage in ex parte conversations; that Dailey admitted that both he and chairman Corbisiero have gone to Vaughan in the past for legal advice on Board-related matters; and, finally, that Dailey could not emphatically state that he did not have "even the remotest psychological tendency to favor the position of the prosecutor for the Racing Board." Dailey Depo. Tr. at 107.

■ There exists a presumption of administrative honesty and integrity, *Withrow,* 421 U.S. at 47, 95 S.Ct. at 1464, and the party claiming bias has the burden of proving it. *Schweiker v. McClure,* 456 U.S. 188, 196, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982). Plaintiff has failed to meet this burden and defendant is entitled to summary judgment. The mere fact that Vaughan appointed Dailey, and then prosecuted the case before him, is not necessarily unfair. Vaughan's recommendations were based upon the subject matter and complexity of particular cases and there is no doubt that Dailey possessed extraordinary experience in this field. Moreover, the chairman actually made the appointment, even though it was rare that he would not follow Vaughan's recommendation. In addition, the fact that Vaughan also selected the prosecutor, and in this case selected himself, does not create a risk of unfairness because there is no proof that Dailey changed his standards based on the prosecutor before him. Simply because Vaughan has given legal advice to Dailey in the past with respect to Board-related matters does not suggest that Dailey is predisposed to rule in Vaughan's favor

when Vaughan appears before him. Since Vaughan is counsel to the Board, it would be highly illogical if he did not give advice to Board employees on Board-related matters. Both Dailey and Vaughan are attorneys and Dailey testified that he did not always follow the advice given by Vaughan. The mere fact that Dailey found for the Board in each of the ten cases Vaughan prosecuted before him is of absolutely no probative value in this regard.

■ The evidence clearly establishes that upon being selected as hearing officer, Dailey spoke with Vaughan. This is insufficient to establish unfairness, even when Vaughan is the prosecutor, because the matters discussed were either procedural issues such as scheduling, or superficial inquiries regarding the nature of the case. The merits of the matters in question were never discussed and there is no suggestion that Dailey was ever involved in the investigation of this matter. In fact, plaintiff does not suggest that any improper communications occurred in this case, only that the opportunity for ex parte communications creates a risk of impropriety. Notwithstanding this risk, plaintiff must come forward with stronger proof to satisfy his burden. We note that this court has always been subject to inquiries from attorneys regarding the scheduling of matters. In an ideal world, such questions would never be raised without opposing counsel's presence or acquiescence. However, since the "ideal" often is impossible when attorneys are involved, such communications do take place and it would be extremely inefficient if courts were precluded from simply stating that a matter is scheduled for a certain date and time. Plaintiff can hardly demand more from an administrative agency than is possible in the judicial system.

■ The final claim of bias is that Dailey could not unequivocally state that he did not have "even the remotest psychological tendency to favor the position of the prosecutor." Plaintiff claims that this is clear evidence of Dailey's bias. The extremely narrow manner in which the question was phrased, however, does not lead us to be-

lieve that Dailey's answer is entitled to the sinister interpretation plaintiff attempts to attribute to it. Moreover, it is obvious that every judge has preconceived notions based on past experiences. As Chief Justice Rehnquist has stated: "Proof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* ... would be evidence of lack of qualification, not lack of bias." *Laird v. Tatum*, 409 U.S. 824, 835, 93 S.Ct. 7, 13, 34 L.Ed.2d 50 (1972) (memorandum on motion to recuse). The key question is whether these notions prevent the judge from rendering a fair and impartial decision. Plaintiff has failed to establish that Dailey is unfair. In addition, the mere fact that only eight of one hundred ninety-nine cases involving license suspensions that were argued before Board hearing officers since 1984 found for the licensee does not establish any inherent unfairness in the Board's procedures. Obviously, the Board only brings a formal proceeding after conducting an investigation. Moreover, if the prosecution prevailed on only fifty percent of its cases, as plaintiff seems to suggest should be the result, the Board undoubtedly would be facing much more serious challenges to its procedures than plaintiff is raising.

In conclusion, we find that the Board's procedures did not violate plaintiff's due process rights. In addition, plaintiff was able to present two challenges to the Board's actions via article 78 proceedings, although neither was successful, before being suspended. Notwithstanding this conclusion, however, we recognize that the procedures employed were hardly perfect. It obviously would remove any specter of impropriety if independent administrative judges or arbitrators could be appointed. Unfortunately, such a policy might strain an already overburdened state economy. However, as we previously noted, *see supra* note 2, an Executive Order signed by Governor Cuomo on December 4, 1989 attempts to improve the procedures available in administrative proceedings. In compliance with this order, we were informed at oral argument that the Board now has a strict division of labor between prosecutors and hearing officers. While there was nev-

er a mix of prosecutorial and adjudicative responsibilities in the same proceeding, now the roles are not mixed even in separate proceedings. While this policy may alleviate some of the concerns of licensees, it does not change our conclusion that even without such a policy, plaintiff's due process rights were not violated.

For all the foregoing reasons, we find that defendant Corbisiero is entitled to summary judgment. The clerk will enter judgment for the defendant.

SO ORDERED.